161 N.J. Super. 1 (1978)
390 A.2d 706
KALEEL GAREEB, PLAINTIFF-APPELLANT,
v.
ROBERT A. WEINSTEIN, GEORGE F. CATLETT, ALDEN B. HALL, FRANK F. LEIGNER, BEING MEMBERS OF THE EXECUTIVE CREDENTIALS COMMITTEE OF NEWTON MEMORIAL HOSPITAL AS OF APRIL 17, 1972, AND STEWART RING, M.D., DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued March 21, 1978.
Decided June 29, 1978.
*4 Before Judges LYNCH, KOLE and PETRELLA.
Mr. Albert L. Cohn argued the cause for appellant (Messrs. Cohn & Lifland, attorneys; Mr. James M. Docherty on the brief).
Mr. John Robert Heher argued the cause for respondents Weinstein, Hall and Leigner (Messrs. Smith, Stratton, Wise & Heher, attorneys; Mr. George H. Henningsen on the brief).
Mr. Daniel M. Hurley argued the cause for respondents Catlett and Ring (Messrs. Conway, Reiseman, Michals, Wahl, Bumgardner & Hurley, attorneys; Mr. George R. Hardin on the brief).
*5 The opinion of the court was delivered by LYNCH, P.J.A.D.
Plaintiff, a licensed medical doctor specializing in radiology, appeals from a summary judgment dismissing his complaint for money damages against defendants who (except for defendant Stewart Ring, M.D.) as members of the Executive Credentials Committee of Newton Memorial Hospital, suspended plaintiff's staff privileges at the hospital on April 17, 1972. In granting summary judgment the trial judge held that plaintiff was precluded from maintaining this action because, as the judge said, "the same matters have already been litigated or should have been litigated" in a prior prerogative writ action (hereinafter the "Hospital" case)[1] wherein plaintiff sought to compel the hospital to readmit him to staff privileges when he was not reappointed after the 1972 annual staff review. The trial judge's stated grounds for dismissal of the complaint were: (1) operation of the "single controversy" doctrine; (2) collateral estoppel by reason of the judgment in the Hospital case, and (3) public policy considerations dictating that judgment as to qualifications for staff privilege be left to authorized medical staff members who should not be subject to damage suits for their actions in making such judgments.
We disagree and reverse.
In reviewing the trial judge's grounds for dismissal, it is necessary to understand the nature of the prior action against the hospital, the scope of the court's function therein, the basis of its decision, what was decided  and what was not decided in that case  and then to evaluate the same factors in the instant suit.
On April 17, 1972 the Executive Credentials Committee (ECC) of which defendants (except Stewart Ring, M.D.) were members, passed a resolution suspending the staff privileges *6 which Dr. Gareeb had held since March 1972. The resolution stated:
The privileges of Dr. Kaleel Gareeb in radiology be suspended because of lack of confidence in his x-ray reporting by many members of his staff. Because of an inability to communicate and lack of objectivity in his work it was recommended that he be dropped from his staff classification with the privilege of reapplying, in some category other than Radiology.
About three months later, on July 20, 1972, the board of governors rescinded the suspension ordered by ECC. In the meantime, however, Dr. Gareeb's annual staff appointment had expired. Dr. Gareeb thereafter applied for readmission to the staff. The ECC recommended that plaintiff not be reappointed. Hearings were conducted by an ad hoc committee established pursuant to the medical staff by-laws, and the board of governors reviewed the record of these hearings and supplemental materials submitted by plaintiff and others. At its meeting of May 9, 1973 the board reached the following conclusions:
(1) The following charges were not sustained:
(a) Incompetency;
(b) Lack of good reputation.
(2) The charges of lack of confidence and inability to work with others was sustained,
(3) In view of the detrimental effect of item #2 above the request for membership on the Hospital's Medical Staff for radiological privileges was denied.
The complaint in the prior Hospital case sought a review of the action of the board of governors (and not the suspension which had been ordered by ECC) denying the application for readmission and rescinded by the board. Dr. Gareeb contended that he was denied due process in the administrative proceedings, that the record did not support the conclusions reached, and that his former associate, Dr. Wylly, chairman of ECC, conspired with and influenced the participants in the proceedings, causing denial of staff privileges.
*7 In his oral opinion in the Hospital case Judge Muir pointed out that the scope of his responsibility was merely a review of the hospital proceedings, "much like that required in a judicial review of any administrative decision." He defined the standard of his review to be "whether the Board made a reasonable judgment based upon the facts as presented to it."
Judge Muir noted that Article III of the hospital by-laws established the qualifications for staff membership: (1) competence in the doctor's particular field; (2) a good reputation, and (3) ability to work with others. He also noted that the by-laws provided that at a meeting of the ad hoc committee the affected physician had the right to cross-examine any witnesses but that the record showed that Dr. Gareeb had been denied the right to cross-examine Dr. Wylly. Judge Muir therefore remanded the matter to the committee to permit Dr. Gareeb to exercise that right. On the remand Dr. Gareeb, acting pro se, cross-examined Dr. Wylly but the board of governors affirmed its original determination. With the record thus amplified the judge again reviewed it.
In examining the proceedings before the ad hoc committee Judge Muir noted that the committee determined that Dr. Gareeb was not entitled to legal counsel and he was so advised. The judge reviewed the testimony of several witnesses who testified before the ad hoc committee, including plaintiff, Dr. Wylly and Drs. Fletcher, Weinstein, Leigner and Ring, who are defendants here, as well as Dr. Gross, a radiologist, who appeared for Dr. Gareeb. Judge Muir also noted that the witnesses and the committee had difficulty in understanding some of the questions asked by Dr. Gareeb because of his difficulty with the English language as he conducted his own "defense."
After reviewing the record in the Hospital proceedings Judge Muir held: (1) Dr. Gareeb was not denied due process; he was fully apprised of the charges against him; he was given a hearing where he had an opportunity to present his *8 case, and the fairness directed by the by-laws was present in the procedures followed; (2) there was no evidence of bad faith and the record evidenced a significant amount of good faith in the conduct not only of the board of governors but also of the ad hoc committee; (3) the board must be granted latitude in the exercise of its discretion; (4) the court should not make an independent judgment but rather merely must determine if there was an abuse of discretion, and (5) there was sufficient evidence in the record that Dr. Gareeb "lacked the ability to sit down and consult" and "the ability to work with others," to support the board's denial of his application. Thus, Judge Muir did not adjudicate the fact of Dr. Gareeb's unworthiness for staff privileges but only found that there was sufficient evidence in the record of the hospital proceedings to support the determination made by the board.
It is with that background that we consider what is alleged in the complaint in this matter. Here, plaintiff seeks money damages from the individual members of ECC and Dr. Stewart Ring, none of whom was a party in the prior suit. The complaint alleges that on April 17, 1972 defendants Weinstein, Catlett, Hall and Leigner, as members of ECC, in conspiracy with Dr. Wylly, "improperly, unlawfully, maliciously, illegally, tortiously and deliberately without notice to plaintiff, without affording him an opportunity to be heard" suspended his staff privileges.[2] As a result of defendants' actions plaintiff allegedly suffered harm, loss, injury and damage, and economic and financial hardship, for which he seeks compensatory and punitive damages. He further alleges that defendant Ring also conspired with his codefendants and Dr. Wylly, causing similar injury for which plaintiff seeks damages against that defendant. It was to these allegations that defendants pleaded that the instant action *9 is barred by the "single controversy" doctrine and collateral estoppel. As noted, the trial judge granted defendants' motion for summary judgment on those grounds.

The "single controversy" doctrine.
The descriptive term "single controversy" seems unique to New Jersey. In other jurisdictions the concept is said to be a policy against the "splitting" of a claim which gives rise to a "bar" of a subsequent action. See Restatement, Judgments 2d (Tent. Draft No. 5, 1978), § 61 at 139. Our own courts have also equated it to the doctrine against "splitting." See, e.g., Ajamian v. Schlanger, 14 N.J. 483, 485, cert. den. 348 U.S. 835, 75 S.Ct. 58, 99 L.Ed. 659 (1954); Applestein v. United Board & Carton Corp., 35 N.J. 343, 356 (1961); New Jersey Highway Authority v. Renner, 18 N.J. 485, 492 (1955).
Whatever the label used, the doctrine is grounded on the proposition that "[t]he sound administration of a judicial system requires that all facets of a single dispute between parties be completely determined in one action." Applestein v. United Board & Carton Corp., supra, 35 N.J. at 356. And it is "rooted in the need to protect a defendant from a multiplicity of suits and their attendant harassment," as well as public policy considerations against piecemeal litigation in the interest of orderly administration of justice. Webster v. State Farm Mut. Auto. Ins. Co., 348 A.2d 329, 331 (Del. Super. Ct. 1975). As said in the Appellate Division decision in Falcone v. Middlesex Cty. Med. Soc., 87 N.J. Super. 486 (App. Div. 1965), aff'd in part, rev'd in part on other grounds 47 N.J. 92 (1966):
* * * [S]ound public policy [underlies] the requirement that a suitor must seek all the relief to which he is entitled by reason of a defendant's wrong in one action. The fragmentizing of a cause of action, involving a single wrong, by separate suits advancing separate claims for redress from the same wrong, unduly burdens the judicial administration and unfairly subjects a defendant to unwarranted additional expense and aggravation. [at 490]
*10 See also, Applestein v. United Board & Carton Corp., supra, 35 N.J. at 357.
However, the rule against splitting applies only where the several actions are between the same parties. 1 C.J.S. Actions § 102(3) at 1312. Thus, Restatement, Judgments 2d (Tent. Draft No. 5, 1978), § 61, comment (e) at 148, states: "The rule against splitting * * * takes as its model a claim and action by a single plaintiff against a single defendant."[3] A person not a party to an action is ordinarily not entitled to the benefits of the rule against splitting in a subsequent action. See Restatement, Judgments 2d (Tent. Draft No. 2, 1975), § 78 at 2.
And in all the cases in New Jersey where the single controversy doctrine was applied to bar fractional litigation there was, in fact, identity of parties in both actions. See Applestein v. United Board & Carton Corp., supra, and cases cited therein. On the other hand, our courts have declined to apply the doctrine as a bar where different parties were involved in the first and second actions. McFadden v. Turner, 159 N.J. Super. 360 (App. Div. 1978); Humble Oil and Refining Co. v. Church, 100 N.J. Super. 495 (App. Div. 1968); Moss v. Jones, 93 N.J. Super. 179 (App. Div. 1966).
The trial judge here held that his decision to dismiss was controlled by the case of Falcone v. Middlesex Cty. Med. Soc., supra, particularly the opinion of the Appellate Division, reported at 87 N.J. Super. 486 (App. Div. 1965). That decision was affirmed in part and reversed in part in 47 N.J. 92 (1966), the reversal being irrelevant to the issues here. It is true that in Falcone plaintiff, who in an earlier action had succeeded in obtaining admission to defendant Medical Society, was held to be precluded under the doctrine of *11 "single controversy" from maintaining a later action against the Society for money damages. 47 N.J. at 95. But the preclusion was effected only against defendant in the original suit and not against two hospitals which had not been parties to the original suit but which were defendants in the second. Thus Falcone followed the identity of parties requirement.
In Moss v. Jones, supra, plaintiff, who had been struck by a car, instituted an action against the operator of the vehicle involved and obtained a judgment. While that action was pending he instituted a separate suit for the same injuries against the owner of the vehicle asserting liability under respondeat superior. The trial judge granted the owner's motion for summary judgment in the second suit. The Appellate Division, noting that the liability of principal and agent as joint tort-feasors was joint and several, held that they could be sued jointly or that actions could be brought against them separately. 93 N.J. Super. at 184. The court distinguished Ajamian v. Schlanger, supra, 14 N.J. 483, and Falcone, supra, from the case before it:
* * * But those cases involved the question of whether a plaintiff may fragmentize his claims against the same defendant, by seeking a measure of relief in one suit and, having obtained it, thereafter seek additional relief in a second suit by reason of the same alleged wrong. The Supreme Court said that he may not; that a plaintiff should seek all of his relief against the same defendant for the alleged wrong in his initial action. We have a different situation herein, because the second action is against a different person and pursuant to the rule of several liability. [93 N.J. Super. at 184-185; emphasis supplied]
In Moss v. Jones the court clearly rejected the reasoning of the trial judge in the instant case, that since the defendants in the two actions were principal and agent, they were "the same basic parties" and that the single controversy doctrine should apply.
The more recent case of McFadden v. Turner, supra, was a tort action where a previous action brought against a *12 hospital for injuries suffered by a patient in a fall in a hospital bathroom had been settled for $9,500, the hospital's liability being limited by statute to $10,000. Later plaintiff sued three nurses on the same cause of action. The majority, relying on Moss v. Jones, Restatement, Judgments 2d, and other authorities, refused to dismiss the second suit on the basis of the single controversy doctrine, even though the hospital's liability would have been vicarious by reason of the nurses' actions.
We recognize some logic in the dissenting judge's position in McFadden that, since the hospital's liability would have rested by reason of respondeat superior on the fault of the nurses sued in the second suit, both actions were based on the same cause of action and therefore the liability of each could have readily been tried in the first action. The same criticism could have been made of the decision in Moss v. Jones. But even if it were valid, that reasoning would not apply here. In Moss v. Jones and McFadden, the first and second actions were based on the negligence of the same agents (the driver in Moss and the nurses in McFadden). In the original suit against the hospital in this case, however, it was not the actions of these defendants for which the hospital would have been responsible. Rather, the complaint in the initial action charged the hospital with wrongfully denying plaintiff's reapplication for staff privileges because of the actions of the ad hoc committee and board of governors.
It should be noted that our rules concerning joinder of parties are implicated on this issue. See McFadden v. Turner, supra, 159 N.J. Super. at 370. A ruling that plaintiff is precluded from bringing this claim would constitute, in effect, a holding that plaintiff was required to join these defendants and this cause of action in the suit against the hospital. Under the permissive joinder rules of claims and parties (R. 4:27-1 and R. 4:29-1(a)) plaintiff might have joined them in the Hospital case, but the question in this case is not whether plaintiff might have brought this *13 claim against these defendants in the prior suit, but rather whether he was required to do so. R. 4:28-1(a) denominates the parties who must be joined in an action:
A person who is subject to service of process shall be joined as a party to the action if (1) in his absence complete relief cannot be accorded among those already parties, or (2) he claims an interest in the subject of the action and is so situated that the disposition of the action in his absence may either (i) as a practical matter impair or impede his ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or other inconsistent obligations by reason of the claimed interest. * * *
We conclude that the individual defendants here were not indispensable parties under this rule in the Hospital case and see no sound reason for expanding the rule to cover parties (and claims) now regarded as merely permissibly joinable.
For all of the foregoing reasons we conclude that the trial court erred in barring plaintiff's action here on the ground of the "single controversy" rule.

Collateral estoppel.
The second ground asserted by the trial judge in granting defendant's motion for summary judgment was that plaintiff was collaterally estopped in this action by dismissal of his complaint in the prior Hospital case. As the judge put it, plaintiff was barred from raising again "in an independent action the very issues which I find Judge Muir to have considered and to have disposed of in that prior litigation."
In applying the doctrine of collateral estoppel "the inquiry must always be as to the point or question actually litigated and determined in the original action  not what might have been thus litigated and determined  for it is only upon such matters as were actually litigated that the judgment is conclusive." Paterson v. Baker, 51 N.J. Eq. 49, 54 (Ch. 1893), as quoted in Mazzilli v. Accident, etc., *14 Cas. Ins. Co., etc., 26 N.J. 307, 314 (1958). (Emphasis supplied.) As said by Justice Proctor in Mazzilli:
* * * The doctrine is restricted to matters or facts directly in issue and does not extend to "any matter which came collaterally in question, * * * nor * * * any matter incidentally cognizable, nor * * * any matter to be inferred by argument from the judgment." Mullaney v. Mullaney, 65 N.J. Eq. 384, 388 (E. & A. 1903); Freeman, Judgments (5th ed. 1925), § 691. Thus, a distinction must be drawn between those matters or facts which were directly in issue and those described as merely collateral or incidental. Freeman suggests the following basis for the distinction between the two:
"The doctrine of estoppel is restricted to facts directly in issue and therefore does not ordinarily extend to facts which may be in controversy, but which rest in evidence and are merely collateral even though they may have been passed upon. `A fact or matter in issue is that upon which plaintiff proceeds by his action, and which the defendant controverts in his pleadings, while collateral facts are such as are offered in evidence to establish the matters or facts in issue.'
During the trial of a cause, evidence may properly be received of the existence or nonexistence of facts which, though they bear upon an issue and tend to show on which side of it the truth is, are not, though conceded to exist, necessarily conclusive. It is this class of facts which the courts have usually intended to designate by the terms `collateral,' `incidental,' or `not directly in issue,' and therefore as not being proved or disproved by the judgment, though controverted at the trial, and perhaps passed upon by the court or jury and exercising a controlling effect over the verdict and judgment." (Id., § 690, at p. 1457) [26 N.J. at 315-316]
From what we have said earlier in this opinion, it is apparent that Judge Muir did not, in any way, determine the truth or falsity of plaintiff's present allegations. In this action the charge is that defendants, as members of ECC, improperly suspended plaintiff's privileges on April 17, 1972; that defendants acted maliciously, willfully and intentionally; that defendants conspired with Dr. Wylly in their wrongful acts, and that defendant Ring conspired with defendants and Dr. Wylly to "oust" plaintiff from his privilege, to interfere with plaintiff's alleged partnership with Dr. Wylly and to interfere with his economic status and professional standing.
*15 The gravamen of the instant complaint relates to defendants' actions in suspending plaintiff's staff privileges, whereas the prior action related to denial by the board of governors of plaintiff's reapplication for such privileges after expiration of his appointment. None of the allegations here was determined in the prior action. Even assuming that issues relevant to this case were directly in issue and actually decided in the Hospital case, we conclude that application of collateral estoppel here would be inappropriate.
In State v. Gonzalez, 75 N.J. 181 (1977), the Supreme Court discussed the modern view of collateral estoppel. It noted that the former requirement of mutuality (Miller v. Stieglitz, 113 N.J.L. 40, 44 (E. & A. 1934)
* * * has been replaced with a flexible approach closely tied to the practicalities of certain types of litigation and to the details of the prior adjudication, rather than an indiscriminate application of collateral estoppel whenever a party may be said to have had a "day in court." [at 191]
The court added (at 189-190) the caveat that a variety of factors may make use of collateral estoppel in a particular case either unjust or counterproductive. As a "convenient summary" of the factors to be taken into consideration, the court (at 190, n. 5) quoted Restatement, Judgments 2d (Tent. Draft No. 2, 1975), § 88 at 88-91. The American Law Institute has subsequently amended § 88 in its Tentative Draft No. 3, so it now reads, in part:

§ 88. Issue Preclusion in Subsequent Litigation with Others.
A party precluded from relitigating an issue with an opposing party, in accordance with §§ 68 and 68.1, is also precluded from doing so with another person unless the fact that he lacked full and fair opportunity to litigate the issue in the first action or other circumstances justify affording him an opportunity to relitigate the issue. * * * [Restatement, Judgments 2d (Tent. Draft No. 3, 1976), § 88 at 161]
See also, United Rental Equip. Co. v. Aetna Life & Cas. Ins. Co., 74 N.J. 92, 101 (1977); Continental Can Co. v. Hudson *16 Foam Latex Prod., 129 N.J. Super. 426, 429 (App. Div. 1974).
As a result, plaintiff's opportunity in the Hospital case to litigate the issues in this action must be evaluated. In this regard it is important to note, first, that the prior action against the hospital was not decided after a testimonial trial, with the attendant procedures provided by the New Jersey court rules, but rather was based upon an evaluation of the record produced at the hospital level. Judge Muir was required to confine his effort "to determining whether the decision made by the hospital [was] supported by substantial credible evidence and [was] neither arbitrary nor capricious." Guerrero v. Burlington Cty. Mem. Hosp., 70 N.J. 344, 356 (1976). Hence, it is readily apparent that plaintiff did not have a substantial opportunity to litigate the issues raised here in the Hospital case.
Furthermore, because the action upon which defendants seek to predicate their claim of collateral estoppel was essentially a review of the findings and conclusions of the hospital, it is appropriate to examine the forum provided by the hospital in determining whether the principles of collateral estoppel should apply. We note that there is no indication in the record that the hospital by-laws which applied to the hearing procedure being reviewed afforded plaintiff any right of discovery. Plaintiff was not permitted to have legal counsel assist him. Finally, the witnesses were not sworn.
In Garrow v. Elizabeth Gen'l Hosp. & Dispensary, 155 N.J. Super. 78 (App. Div. 1978), certif. granted 76 N.J. 233 (1978), the court ruled (at 91-94) that a physician is entitled to pre-hearing discovery, at least with respect to the information on which the hospital "prosecution" will rely. More importantly, however, the court also ruled (at 89) that the enhanced significance, both procedurally and substantively, of the hospital hearing brought about by Guerrero, supra, required that a physician be entitled to a right of counsel at the hearing.
*17 Part of the reasoning for requiring that physicians have the right of counsel was that, since what was being reviewed by the courts on appeal was a record of the marshalling, presentation and testing of facts, then the court was "speaking in terms of the special and unique skills and training of the lawyer, the benefit of which neither the physician, the hospital, nor the reviewing court should be required to forego." Ibid.
In this case, plaintiff's need for representation was apparent from the record. Judge Muir commented at one time:
[I]n all deference to Dr. Gareeb's background, his education is obviously there, but his pronounciation [sic] of the English language and his juxtapositioning of the parts of speech make it difficult to comprehend, when what he has said is written down, precisely as to what he is saying.
Later, in commenting upon the transcript of the hearing before remand, when Dr. Wylly, defendant Weinstein, defendant Leigner and defendant Ring were all testifying, Judge Muir said, "I note the transcript shows difficulty by not only the witnesses but by the committee in understanding some of Dr. Gareeb's questions or statements at that time." This hearing provided a substantial part of the record upon which Judge Muir based his opinion whether or not the hospital arbitrarily denied plaintiff reappointment to hospital privileges. Plaintiff had been denied the right to cross-examine Dr. Wylly at that hearing, so Judge Muir remanded the case to the hospital to afford plaintiff the opportunity to cross-examine Wylly. There is no indication that counsel were permitted at this second testimonial opportunity either. Judge Muir's comments make it clear that plaintiff was in actual fact prejudiced and hindered in the presentation of his case and the examination of the relevant witnesses, including several of the defendants herein, by the denial of his right to counsel and his lack of discovery rights. The significance of these procedural deficiencies in the forum provided to plaintiff by the hospital in determining whether *18 collateral estoppel shall apply, is explained in Restatement, Judgments 2d (Tent. Draft No. 3, 1976), § 88 at 161:
The circumstances to which consideration should be given include those enumerated in § 68.1 and also whether:

* * * * * * * *
(2) The forum in the second action affords the party against whom preclusion is asserted procedural opportunities in the presentation and determination of the issue that were not available in the first action and could likely result in the issue being differently determined; * * *.
And Comment (d) at 164 to that section notes:
Preclusion may be withheld when the party against whom it is involved [sic] can avail himself of procedures in the second action that were not available to him in the first action and which may have been significantly influential in determination of the issue. Differences in this regard include such procedures as discovery devices, plenary as distinct from summary hearing, and the right of jury trial. It may also be relevant that the party against whom preclusion is invoked had no choice, or restricted choice, as to the forum in which the issue was litigated.
See also, Restatement, Judgments 2d (Tent. Draft No. 4, 1977), § 68.1(c) at 27 and Comment (d) at 35.
In the instant matter, although it is a judgment of the Superior Court upon which defendants rely, the different standard of review and the different form of the actual testimonial hearing are appropriate considerations suggesting that collateral estoppel should not apply here.
Since several factors which our Supreme Court and Restatement, Judgments 2d suggest should preclude application of collateral estoppel are present in this case, and for the other reasons stated earlier herein, we conclude that the trial judge erred in relying on that doctrine in dismissing the complaint.

*19 The trial judge's "public policy reasons" for dismissing the complaint.

On this subject the trial judge expressed his view that members of a committee such as ECC should be immune from suits for damages on account of their actions in such capacity  apparently a suggestion of a privilege, absolute or qualified. Such a defense would be an affirmative one which must be separately pleaded. R. 4:5-4. It was not so pleaded here. Therefore the issue was not before the trial judge, is not before us and we do not decide it. However, defendants may move before the trial court to amend their answers in such manner as they may deem appropriate.
The order dismissing the complaint is reversed and the matter is remanded to the trial court for further proceedings.
NOTES
[1] Decided by Judge Muir in oral opinion of June 3, 1976, affirmed by this court in an unpublished opinion. Certification was denied at 75 N.J. 518 (1978).
[2] As we have stated above, this suspension was rescinded by the board of governors on July 20, 1972.
[3] The tentative draft of Restatement, Judgments 2d, does not use the traditional words of art to refer to the effect of a prior judgment in varying circumstances. Rather, it speaks in terms of "issue preclusion" and "claim preclusion." Op. cit. (Tent. Draft No. 1, 1973) § 45, comments at 20-22.