190 N.J. Super. 502 (1983)
464 A.2d 1142
BATES MARKETING ASSOCIATES, INC., A FOREIGN CORPORATION, AND TOY ADVISORY GUILD, INC., A FOREIGN CORPORATION, PLAINTIFFS-APPELLANTS,
v.
LLOYD'S ELECTRONICS, INC. AND LLOYD'S OF CALIFORNIA, INC., DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued April 19, 1983.
Decided May 4, 1983.
*503 Before Judges MICHELS, PRESSLER and TRAUTWEIN.
Edward D. Bortz argued the cause for the appellants (Hein, Smith & Berezin, attorneys; Robert T. Quinn and Edward D. Bortz on the brief).
Frederick L. Whitmer argued the cause for the respondents (Pitney, Hardin, Kipp & Szuch, attorneys; James H. Foster, *504 James L. Nulman, Lawrence H. Jacobs, Katherine S. Abrams, Peter M. Laughlin and Frederick L. Whitmer on the brief).
The opinion of the court was delivered by PRESSLER, J.A.D.
The primary issue raised by this appeal is the applicability to this cause of action of the entire controversy doctrine. The trial judge, concluding that that preclusionary doctrine was here applicable, dismissed the action with prejudice. We reverse.
Plaintiffs Bates Marketing Associates, Inc. (Bates), a Delaware corporation having its principal place of business in New York, and Toy Advisory Guild, Inc. (TAG), a Delaware corporation having its principal place of business in New Jersey, are in the business of developing and marketing toys. In 1976 they entered into negotiations with a then newly formed partnership, Products International, whose partners were two corporations, Lavco Inc. and Lloyd's Western Corp. (Western), both California corporations. Products International proposed, among other activities, to promote and market plaintiffs' products, and an arrangement was entered into pursuant to which plaintiffs delivered prototypes for various of their toys to the partnership, and TAG leased space to the partnership. It appears that thereafter the partnership failed to take any steps to evaluate and market the toys and refused to return the prototypes. Concluding that their arrangement with the partnership had been fraudulently induced by the partnership's misrepresentations regarding its financial strength and marketing expertise, and alleging that the partnership's wrongful conduct resulted in their loss of profits, royalties and marketing opportunities, plaintiffs brought a diversity action in the federal district court for the southern district of New York in 1978 against the partnership, against its partners, Lavco and Western, and against one Bernard Lavitch, a California resident, who was the owner of Lavco. They sought damages for the losses above *505 described, for the conversion of the prototypes and for unpaid rent.
Plaintiffs were unable to effect service of process in the federal action on Lavco or Lavitch but did serve Western and the partnership pursuant to California Long Arm Statute, C.P.L.R. § 302, by personally serving Western's registered agent in California. Western did not file an answer and default was entered against it. Thereafter, a proof hearing was conducted by a federal magistrate, who recommended damages for Bates in the sum of $575,770.95 and damages in favor of TAG in the sum of $21,863.45. Default judgment against Western and the partnership was entered in March 1980 in accordance with these recommendations. The judgment could not, however, be satisfied because of the insolvency of both Western and Products International and the consequent seizure of Product International's assets by a bank creditor.
This action, instituted in the Law Division in September 1980, represents the second stage of plaintiffs' attempt to secure a remedy for the alleged injurious acts of Western. Western, it appears, is a wholly owned subsidiary of defendant Lloyd's of California, Inc. (California, Inc.), allegedly a New Jersey corporation. California, Inc. in turn is a wholly owned subsidiary of defendant Lloyd's Electronics, Inc. (Electronics), a Delaware corporation. Each is alleged to have its principal place of business in New Jersey. The theory of the complaint is that both California, Inc. and Electronics are alter egos of Western and hence that each is liable for Western's actions. In short, plaintiffs are seeking to pierce the corporate veils of both California, Inc. and Electronics which otherwise would insulate them from liability for Western's obligations. It is against this factual and relational background that defendants successfully sought to have this action dismissed on the basis of the entire controversy doctrine.
We are of the view that the doctrine was incorrectly applied. As we understand the entire controversy doctrine, its *506 scope embraces only the consequences of a litigant's failure in the first action to have joined claims by and among those who were already parties thereto. Hence it is not a rule requiring the joinder of nonparties. Thus, the doctrine is typically available to preclude the subsequent litigation of claims which were not but should have been raised in the initial litigation, provided, however, that those unraised claims involved parties to the initial litigation. Consequently, a claim against a person who was not a party to the initial litigation is ordinarily not precluded from being subsequently litigated even if it is the same as or transactionally related to the claim which was the subject of the initial litigation. See Aetna Ins. Co. v. Gilchrist Brothers, Inc., 85 N.J. 550, 558-560 (1981); McFadden v. Turner, 159 N.J. Super. 360 (App.Div. 1978). And see Gareeb v. Weinstein, 161 N.J. Super. 1 (App.Div. 1978); Moss v. Jones, 93 N.J. Super. 179 (App. Div. 1966). Cf. Wm. Blanchard Co. v. Beach Concrete Co., Inc., 150 N.J. Super. 277 (App.Div. 1977), certif. den. 75 N.J. 528 (1977). It is further significant to note in this regard that when the entire controversy doctrine was first expressly provided for by the rules of court in 1979, it was included as part of R. 4:27, which deals with joinder of claims, rather than R. 4:28, which addresses joinder of parties. See R. 4:27-1(b), adopted July 16, 1979, to be effective September 10, 1979.
Since neither California, Inc. nor Electronics was a party to the federal litigation, plaintiffs are not, at least prima facie, precluded from attempting by this second action to hold them answerable for Western's acts. The question, then, is whether there is some unique characteristic of the claims made here against these defendants which would affect the usual predicates of the entire controversy doctrine and would extend its bar to claims against persons not parties to the original action. We perceive none.
First, we reject these defendants' suggestion that their alleged identity to the defendant in the federal action has any special preclusive consequence. Despite the alter-ego basis of *507 this action, it remains clear that all three corporations here involved are structurally, technically and jurally separate and distinct entities in terms of party status and that no judgment could be rendered against any of them which is not separately and distinctly named as a party-defendant. Thus, while the purpose of the litigation may be ultimately to strip them of their separateness, they remain for litigation purposes entirely independent jural entities. See, also, Lyon v. Barrett, 89 N.J. 294, 300-301 (1982).
Defendants further contend that they are not now subject to subsequent litigation arising out of the same transaction involved in the federal suit since they were indispensable parties thereto. We disagree. They were, in fact, not indispensable parties to the federal action as framed by plaintiffs. That action only addressed plaintiffs' direct claims against Western as the wrongdoer; no effort was therein made to impose the consequences of Western's wrongdoing on any other party, and we see no basis for imposing upon plaintiffs the obligation to have then attempted to do so.[1] Obviously, a claim that a person is liable for another's act, on whatever theory, requires the joinder of the person whose liability is being sought to be established. The alter-ego theory upon which the alleged liability of California, Inc. and Electronics is based could not be tried in the federal action because they were not parties thereto. Conversely, had they been parties thereto, the alter-ego theory would then have had to have been raised or, pursuant to the entire controversy doctrine, it would have been irretrievably *508 lost.[2] But it does not follow from this that the claim is thereafter precluded even if the parties against whom it is later asserted were not parties to the first action. In this regard the situation is conceptually no different from that addressed in McFadden v. Turner, supra, which involved vicarious liability. The point is the same. An injured party may seek his remedy in successive litigation from each of the separate parties who are liable to him for a single wrong, provided that no such party is itself compelled to defend more than once and provided, further, that no subsequently sued party is precluded from presenting its own defense on the merits.
This last observation brings us to a consideration of defendants' cross-appeal by which they seek a determination of their right, if the action is viable, to relitigate the issues which were determined in the federal action adversely to Western. The principle of collateral estoppel clearly does not apply because of the separable nature of the basis of the claim against these defendants. As succinctly and pertinently explained by 2 Restatement, Judgments, 2d § 59(5) (1980):
A judgment against a corporation that is found to be the alter ego of a stockholder or member of the corporation establishes personal liability of the latter only if he is given notice that such liability is sought to be imposed and fair opportunity to defend the action resulting in the judgment.
Comment g to that section further explains:
It is beyond the scope of this Restatement to state the kind or degree of nonobservance of corporate form from which the conclusion may be drawn that the corporation is the alter ego of those who control it. When that conclusion is reached under the governing law of corporations, however, the consequence under the rules governing judgments is that a judgment nominally against the corporation creates a binding obligation upon those who have acted in corporate dress. The judgment is thus binding only on those individuals associated with the corporation who personally, or through some representative, had adequate opportunity to participate in the litigation leading to the judgment. If at the *509 outset of the litigation the opposing party has manifested an intention to bind individually the persons associated with the corporation, and effects service of process addressed to those persons individually, adequate opportunity is afforded them to defend against the asserted liability. On the other hand, if the claim of individual liability is made at some later stage in the action, the judgment can be made individually binding on a person associated with the corporation only if the individual to be charged, personally or through a representative, had control of the litigation and occasion to conduct it with a diligence corresponding to the risk of personal liability that was involved.
And see, applying the Restatement principle in a situation closely akin to this one, Minton v. Cavaney, 56 Cal.2d 576, 364 P.2d 473, 15 Cal. Rptr. 641 (Sup.Ct. 1961), in which the court stated that
In this action to hold defendant personally liable upon the judgment against Seminole plaintiffs did not allege or present any evidence on the issue of Seminole's negligence or on the amount of damages sustained by plaintiffs. They relied solely on the judgment against Seminole. Defendant correctly contends that Cavaney or his estate cannot be held liable for the debts of Seminole without an opportunity to relitigate these issues.... Caveney was not a party to the action against the corporation, and the judgment in that action is therefore not binding upon him unless he controlled the litigation leading to the judgment.... Although Cavaney filed an answer to the complaint against Seminole as its attorney, he withdrew before the trial and did not thereafter participate therein. The filing of an answer without any other participation is not sufficient to bind Cavaney. "In order that the rule stated in this action [that a person in control of the litigation is bound by the judgment] should apply it is necessary that the one in whose favor or against whom the rules of res judicata operate participate in the control of the action and if judgment is adverse, be able to determine whether or not an appeal should be taken. It is not sufficient that he supplies the funds for the prosecution or defense, that he appears as a witness or cooperates without having control." Restatement of Judgments § 84 comment e; .... [364 P.2d at 476, 15 Cal. Rptr. at 644; citations omitted]
And cf. Allesandra v. Gross, 187 N.J. Super. 96 (App.Div. 1982).
Finally, we note that other issues have been raised both in the trial court and on this appeal which were not decided by the trial court. We do not address and express no opinion as to any such issues.
We reverse and remand for further proceedings consistent with this opinion. We do not retain jurisdiction.
NOTES
[1] We note that had plaintiffs joined Electronics in the federal action, they would have forfeited federal diversity jurisdiction by reason of the incorporation of Bates, TAG and Electronics in the same state and, accordingly, plaintiffs would have been deprived of their forum choice. We further note that while the record shows that Electronics was aware of the nature and pendency of the federal action from its outset, there is nothing therein to show that plaintiffs were then aware of these defendants' alleged status vis-a-vis Western.
[2] We point out that the bulk of the out-of-state authority relied on by defendants as precluding a subsequent "alter-ego" or other derivative action involved just this situation, that is, the subsequent suit was brought against persons who had also been parties to the first action.