Menatsagan **MELIKIAN** and **Kambiz Aftassi**, Appellants,

v.

Anthony **CORRADETTI**; **Morris Coppersmith**; **Rubin Bernstein**; **Bernard Weinstein**; as individuals and in their corporate capacities, individually, jointly, severally and in the alternative and **Corradetti Enterprises, Inc.**, t/a **Anthony Sales**, a New Jersey corporation; **Anthony Associates, Inc.**, a New Jersey corporation; **R.A.M. Packaging**, a New Jersey Fictitious Name; **Memco Trading Co., Inc.**, a Pennsylvania Corporation authorized to do business in New Jersey; **Philber Sales Corporation**, t/a **Bernie Weinstein**, a New Jersey Corporation, and **Anthony Exporting Co., Inc.**, jointly and severally.

No. 85–5370.

United States Court of Appeals, Third Circuit.

Argued Feb. 12, 1986.

Decided May 28, 1986.

Rehearing and Rehearing In Banc Denied June 27, 1986.

Daniel B. Zonies (argued), Cherry Hill, N.J., for appellants.

Charles W. Heuisler (argued), Archer & Greiner, P.C., Haddonfield, N.J., Jack Beasley, Mount Holly, N.J., for appellees Anthony Exporting Co., Inc., Anthony Associates, Inc., Morris Coppersmith, Rubin Bernstein, and Memco Trading Co., Inc.

James A. Landgraf (argued), Myers, Matteo, Rabil & Norcross, Cherry Hill, N.J., for appellee R.A.M. Packaging.

E. Gerald Donnelly, Jr. (argued), Fox, Rothschild, O'Brien & Frankel, Philadelphia, Pa., for appellee Bernard Weinstein and Philber Sales Corp., t/a Bernie Weinstein.

Before HIGGINBOTHAM and STAPLETON, Circuit Judges and TEITELBAUM, District Judge.*

* Honorable Hubert I. Teitelbaum, United States District Judge for the Western District of Pennsylvania, sitting by designation.

## OPINION OF THE COURT

STAPLETON, Circuit Judge:

### I.

In 1982, Menatsagan Melikian and Kambiz Aftassi ("plaintiffs") instituted an action against Anthony Exporting Company ("Exporting") in the United States District Court for the District of New Jersey. Jurisdiction was based on diversity of citizenship. The complaint alleged causes of action for the breach of large contracts for the sale of barley, rice, chickens, and corn by Exporting and requested compensatory and punitive damages. The alleged sales price of the corn contract alone was $44,-000,000. The district court dismissed all but the corn contract claim. The jury returned a verdict by special interrogatory in favor of plaintiffs for breach of this contract and awarded them compensatory damages totalling $1,128,000 but no punitive damages.

Due to Exporting's insolvency, plaintiffs have been unable to satisfy their judgment. After the district court denied plaintiffs' post-judgment motion to amend their original complaint and add as defendants the principals of Exporting, plaintiffs filed this second suit in the same court. Named as defendants are Anthony Corradetti; Morris Coppersmith; Rubin Bernstein; Bernard Weinstein; Corradetti Enterprises, Inc., trading as Anthony Sales; Anthony Associates, Inc.; R.A.M. Packaging; Memco Trading Company, Inc.; Philber Sales Corporation trading as Bernie Weinstein; and Exporting.

Plaintiffs' amended complaint asserts in count one claims based upon alleged fraudulent misrepresentation of the financial condition of Exporting, fraudulent concealment of the true financial condition of that company, and fraudulent inducement to contract. Count two seeks to pierce the corporate veil of Exporting and to hold

Anthony Corradetti, Morris Coppersmith, Rubin Bernstein, Anthony Associates, Inc., R.A.M. Packaging Partnership, Memco Trading Company, Inc., and Corradetti Enterprises liable on the judgment obtained against Exporting as the "alter egos" of that corporation. In count three, plaintiffs allege that Anthony Corradetti, Morris Coppersmith, Rubin Bernstein, and Bernard Weinstein conspired, using a variety of business entities, "to set up a sham and shell corporation as a 'conduit of funds' to take unjust and unfair advantage of the enormous potential in the export field for their type of 'scam.'"

All defendants moved to dismiss plaintiffs' second action under Fed.R.Civ.P. 12(b)(6). Upon the granting of these motions by the district court, plaintiffs filed this appeal. We reverse.

## II.

### A. STANDARD OF REVIEW

On defendants' motion to dismiss the complaint for failure to state a claim upon which relief may be granted, all allegations in the complaint and all reasonable inferences that can be drawn therefrom must be accepted as true and viewed in the light most favorable to plaintiffs. Therefore, we may affirm the district court only if we agree that it is beyond doubt that the plaintiffs can prove no facts in support of their claims that would entitle them to relief. *Bogosian v. Gulf Oil Corp.*, 561 F.2d 434, 444 (3d Cir.1977), *cert. denied* 434 U.S. 1086, 98 S.Ct. 1280, 55 L.Ed.2d 791 (1978).

As this suit is based on the diversity jurisdiction of the federal courts, the relevant law is that of the forum—New Jersey. *Erie Railroad v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).

### B. THE FRAUD CLAIMS

Plaintiffs' first count alleges that Corradetti, Coppersmith, and Bernstein, officers of Exporting, fraudulently induced the corn contract between plaintiffs and Exporting by misrepresenting, during the course of contract negotiations, the financial condi-

tion of the company and by breaching their duty to disclose the company's true financial condition. More specifically, plaintiffs allege that these men, acting in the name of Exporting on July 2 and 9, 1980, misrepresented to plaintiffs that Exporting had the ability to post a substantial three percent performance bond and to obtain a five percent bank guarantee in connection with the proposed $44,000,000 corn sale. In addition, plaintiffs allege that during this same time period, Corradetti, Coppersmith and Bernstein had a duty, arising from their association with Exporting and a principal-agent relationship between Exporting and plaintiffs, to disclose Exporting's true financial condition to plaintiffs. Because of this affirmative duty, the failure to disclose the true state of Exporting's finances is alleged to constitute fraudulent concealment of a material fact.

#### 1. *Collateral Estoppel*

The district court dismissed count one on the basis of collateral estoppel, finding that the plaintiffs had "fully and fairly litigated the issue of fraud in the inducement of contract in their first action."

■ Collateral estoppel precludes the relitigation of an issue that has been put in issue and directly determined adversely to the party against whom the estoppel is asserted. *New Jersey-Philadelphia Presbytery of the Bible Presbyterian Church v. New Jersey State Board of Higher Education*, 654 F.2d 868, 876 (3d Cir.1981); *State v. Gonzalez*, 75 N.J. 181, 380 A.2d 1128, 1131 (1977); *Eatough v. Board of Medical Examiners*, 191 N.J.Super. 166, 465 A.2d 934, 938 (App.Div.1983). However, the bar of collateral estoppel does not extend to "'any matter which came collaterally in question, ... nor any matter to be inferred by argument from the judgment.'" *Allesandra v. Gross*, 187 N.J.Super. 96, 453 A.2d 904 (App.Div.1982) (citations omitted). Thus, the factual issue must actually have been litigated and determined. *Id.*

■ If a party is precluded from relitigating an issue with an opposing party, he

is also precluded from doing so with another person unless he lacked a full and fair opportunity to litigate the issue in the first action or unless other circumstances justify affording him an opportunity to relitigate the issue. *United Rental Equipment Co. v. Aetna Life & Casualty Insurance Co.,* 74 N.J. 92, 376 A.2d 1183, 1188 (1977); *Feniello v. University of Pennsylvania Hospital,* 558 F.Supp. 1365, 1367 (D.N.J. 1983). Therefore, since no special circumstances are here cited, if collateral estoppel applies, plaintiffs are estopped from relitigating the precluded issues against other parties as well as against Exporting.

■ The district court found that plaintiffs' first complaint had "asserted a fraud claim," and that "plaintiffs [had] identified fraud in the inducement as an integral and essential part of their case" in the final pre-trial order.

We agree that the plaintiffs, in their first suit, referred to the same incidents that form the basis of their fraud claim in this second lawsuit. Nonetheless, plaintiffs' first complaint did not raise claims of pre-contract misrepresentation or fraudulent inducement of contract. It relied solely on events following the alleged formation of the corn contract on July 17th to establish Exporting's liability. Count five of that complaint, which requested punitive damages, alleged "intentional and willful conduct of defendants in causing the above breach of contract," but did not refer to fraud in the *inducement* of the contract. Similarly, the references to fraud and misrepresentation in the pre-trial order, in context, relate exclusively to conduct following July 17th and to plaintiffs' punitive damage claim.

While the trial judge did discuss the law of misrepresentation in his charge to the jury, the case was presented to the jury as a breach of contract case. The jury was asked to consider the fraud issue only in the context of deciding whether to award plaintiffs punitive damages for Exporting's breach of contract. Accordingly, the special interrogatories and the jury's responses do not refer to fraud in the inducement of the corn contract.[1]

Thus, the prior judgment involved a determination only that the *breach* of the

---

1. The special interrogatories answered by the jury in the first case read in their entirety as follows:

### SPECIAL INTERROGATORIES

1. As of July 17, 1980, did defendant Anthony Exporting Co., Inc., agree to all the essential terms of the contract alleged by plaintiffs, Menatsagan Melikian and Kambiz Aftassi?

*Yes*
Yes    No

(If your answer is "No," you should proceed no further, and request the Marshal to return you to the courtroom as your verdict will be in favor of defendant Anthony Exporting Co., Inc. If your answer is "Yes," proceed to answer interrogatory No. 2).

2. Did defendant Anthony Exporting Co., Inc., breach the agreement to which reference is made in interrogatory No. 1?

*Yes*
Yes    No

(If your answer is "No," you should proceed no further, and request the Marshal to return you to the courtroom as your verdict will be in favor of defendant Anthony Exporting Co., Inc. If your answer is "Yes," proceed to answer interrogatory No. 3).

3. Specify what, if any, monetary damage do you find that the plaintiffs, Menatsagan Melikian and Kambiz Aftassi, suffered as a result of that breach.

| | |
|---|---|
| Bid Bond on corn: | $ 378,000 |
| Commission on corn sale to GTC: | $ 600,000 |
| Commission on corn sale to private sector: | $ 150,000 |
| | $1,128,000 |

(Proceed to interrogatory No. 4).

4. Were defendant's actions wilful and malicious and done solely for the purpose of harming plaintiffs, Menatsagan Melikian and Kambiz Aftassi?

*No*
Yes    No

(If your answer is "No," you should proceed no further, and request the Marshal to return you to the courtroom as you will have found no basis for assessment of punitive damages. If your answer is "Yes," proceed to answer interrogatory No. 5).

5. What, if any, punitive damages do you determine should be awarded to plaintiffs, Menatsagan Melikian and Kambiz Aftassi?

contract was not willful or malicious. This judgment therefore does not estop plaintiffs from contending that the individual defendants fraudulently misrepresented Exporting's financial condition before the contract came into existence.

This does not mean, however, that issue preclusion will play no role in this case on remand. Plaintiffs will be collaterally estopped from relitigating issues that were actually litigated and decided in the prior action. *See United Rental Equipment Co., supra*, 376 A.2d at 1188. To the extent, for example, that the applicable principles of the law of damages provide for recovery of the same items of loss which the jury evaluated in the first action, plaintiffs will be precluded from contending that their losses exceed the amounts set forth in Special Interrogatory number three. *See Restatement (Second) of Judgments* § 51(2) (1982), *cited with approval in McFadden v. Turner*, 159 N.J.Super. 360, 388 A.2d 244, 247 (App.Div.1978) (cited as *Restatement (Second) of Judgments* (Tent. Draft 4) § 99).

### 2. *Entire Controversy Doctrine*

New Jersey has adopted a broad policy against claim-splitting—the entire controversy doctrine—that is closely related to principles of res judicata. *Gareeb v. Weinstein*, 161 N.J.Super. 1, 390 A.2d 706, 710 (App.Div.1978); *see* Comment, *The Entire Controversy Doctrine: A Novel Approach to Judicial Efficiency*, 12 Seton Hall L.Rev. 260, 265 (1982). The district court relied on this doctrine as well as on issue preclusion in dismissing plaintiffs' complaint. It concluded that plaintiffs' precontract misrepresentation claims were barred because they had not been brought with the breach of contract claim that was part of the same controversy.

The entire controversy doctrine requires that a person assert in one action all related claims against a particular adversary or be precluded from bringing a second action based on the omitted claims against that party. *Aetna Insurance Co. v. Gilchrist Brothers, Inc.*, 85 N.J. 550, 428 A.2d 1254 (1981). This reflects New Jersey's view that the "entire controversy, rather than its constituent causes of action, is the unit of litigation. A plaintiff must seek complete vindication of the wrong he charged." *Malaker Corp. Stockholders Protective Committee v. First Jersey National Bank*, 163 N.J.Super. 463, 395 A.2d 222, 238 (App.Div.1978), *certif. denied* 79 N.J. 488, 401 A.2d 243 (1979).

The entire controversy doctrine reaches more broadly than the "same cause of action" requirement of traditional res judicata doctrine. It is similar to the transaction-based doctrine of claim preclusion described by the Restatement (Second) of Judgments § 24 (1982).[2] *See Gareeb*, 390 A.2d at 710; Comment, *supra*, 12 Seton Hall L.Rev. at 274 n. 117, 288. In determining the dimensions of a single controversy, a court must utilize litigation efficiency as its guide:

[If] the litigants in the action as framed will, after final judgment therein is entered, be likely to have to engage in additional litigation in order to conclusively dispose of their respective bundles of rights and liabilities which derive from a single transaction or related series of transactions, then the omitted component must be regarded as constituting an element of the minimum mandatory unit of litigation. That result must obtain whether or not the component constitutes either an independent cause of ac-

**2.** Restatement (Second) of Judgments § 24 (1982) reads:
(1) When a valid and final judgment ... extinguishes the plaintiff's claim pursuant to the rules of merger or bar.... the claim extinguishes all rights of the plaintiff to remedies against the defendant with respect to all or any part of the transaction, or series of connected transactions, out of which the action arose.

(2) What factual grouping constitutes a 'transaction' ... [is] to be determined pragmatically, giving weight to such considerations as whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage.

tion by technical common-law definition or an independent claim which, in the abstract, is separately adjudicable.

*William Blanchard Co. v. Beach Concrete Co.,* 150 N.J.Super. 277, 293–94, 375 A.2d 675, 683–84 (App.Div.) *certif. denied* 75 N.J. 528, 384 A.2d 507 (1977); *Malaker,* 395 A.2d at 239. *See Tevis v. Tevis,* 79 N.J. 422, 400 A.2d 1189 (1979) (Suit for assault and battery barred after prior suit for divorce on grounds, *inter alia,* of physical abuse); *Ajamian v. Schlanger,* 14 N.J. 483, 103 A.2d 9, *cert. denied* 348 U.S. 835, 75 S.Ct. 58, 99 L.Ed. 659 (1954) (Suit for damages barred after suit for contract rescision based on some fraudulent representations); *cf. Alper Construction Co. v. Garavelli,* 655 S.W.2d 132 (Mo.Ct.App.1983) (Suit for fraudulent inducement of contract barred following suit for quantum meruit).

■ Given this approach to claim preclusion, we can confidently predict that New Jersey would view the first count of plaintiffs' complaint in this action as but another aspect of the same controversy that had been at issue in the first lawsuit. The controversy at issue in both suits involves Exporting's alleged failure to post the security which it promised to provide in connection with a single commodities transaction. The entire controversy doctrine therefore bars a second action against the defendant in the first suit—Exporting.[3] It does not necessarily follow, however, that the district court properly dismissed count one against the individual defendants who were not named in the first action, Corradetti, Coppersmith, and Bernstein.

In *Crispin v. Volkswagonwerk, A.G.,* 96 N.J. 336, 476 A.2d 250 (1984), the Supreme Court of New Jersey held that the entire controversy doctrine can bar a claim assert-

ed against one who was not a party to the prior related proceeding.[4] It acknowledged, however, that this conclusion was inconsistent with a consistent and venerable line of New Jersey cases. As a result, the Supreme Court explicitly directed that the *Crispin* holding be applied only prospectively. Conversely, it decreed that with respect to controversies arising before the decision in *Crispin,* the entire controversy doctrine would not preclude a related claim against one not a party to the original proceeding. 476 A.2d at 254.

Because the plaintiffs' cause of action arose in 1980, long before *Crispin,* their suit is governed by the rule which prevailed before that decision. Accordingly, the applicable rule is that "a claim against a person who was not a party to the initial litigation is ordinarily not precluded from being subsequently litigated even if it is the same as or transactionally related to the claim which is the subject of the initial litigation." *Bates Marketing Associates, Inc., v. Lloyd's Electronics, Inc.,* 190 N.J. Super. 502, 464 A.2d 1142, 1144 (App.Div.), *certif. granted* 94 N.J. 583, 468 A.2d 222 (1983) (citations omitted); *Gilchrist, supra; see,* Comment, *supra,* 12 Seton Hall L.Rev. at 279–82. Therefore,

[If a] plaintiff has been successful in the first action and the judgment in his favor therein remains unsatisfied, he is free to proceed against the other party whose responsibility to him for the harm presents a fact issue not foreclosed by reason of a prior adverse adjudication.

*McFadden v. Turner,* 159 N.J.Super. 360, 388 A.2d 244, 246 (1978.)[5]

In particular, "the recovery of a judgment, not satisfied, against the agent or servant does not bar a separate suit

---

3. Exporting's position in this litigation is not entirely clear. Although Exporting is a named defendant, and is represented by counsel in this appeal, plaintiffs at argument before this court stated that "Anthony Exporting Company, Incorporated, the defendant in the prior case, is not a defendant in the present case." In any event, plaintiffs are not free to sue Exporting a second time on the same controversy that was at issue in the first suit.

4. The Court did not adopt a per se rule; rather, it expressed its intent to proceed "on a step-by-step basis recognizing that the [entire controversy] doctrine is one of judicial fairness and will be invoked in that spirit." 476 A.2d at 253.

5. Of course this does not abrogate the rule that a plaintiff is entitled to only one satisfaction for the same loss. *McFadden, supra.*

against the principal or master." *Moss v. Jones,* 93 N.J.Super. 179, 225 A.2d 369, 372 (App.Div.1966). We are confident that New Jersey, in a pre-*Crispin* case, would apply the same principle when the first suit is against the principal and the second against its agents. Accordingly, the entire controversy doctrine, while constituting a bar to this second action against Exporting, does not prevent plaintiffs from seeking relief from Exporting's agents or principals. *See Gilchrist, supra,* (prior to *Crispin,* entire controversy doctrine not applicable when first suit was against employer for vicarious liability and second suit is against employee); *Gareeb v. Weinstein,* 161 N.J.Super. 1, 390 A.2d 706 (1978) (pre-*Crispin* doctrine does not apply to principal and agent).

Accordingly, we hold that the district court erred in dismissing the count one claims against Corradetti, Coppersmith, and Bernstein.

## C. PIERCING EXPORTING'S CORPORATE VEIL

■ In count two, plaintiffs seek to pierce the corporate veil of Exporting. New Jersey law permits a court to ignore a corporation's separate entity in order to prevent it "from being used to defeat the ends of justice, to perpetuate fraud, to accomplish a crime, or otherwise evade the law." *New Jersey State Department of Environmental Protection v. Ventron,* 94 N.J. 473, 468 A.2d 150, 164 (1983).[6] The subsidiary need not have been created with the intent to defraud, but if it is used to perpetuate a fraud, then the doctrine may apply. *Fortugno v. Hudson Manure Company,* 51 N.J.Super. 482, 144 A.2d 207 (App.Div.1958).

■ Plaintiffs make the following allegations, among others, in support of their second count:

(1) Coppersmith, Bernstein and Corradetti are the beneficial owners of and control Anthony Associates, Inc. ("Associates"),

Corradetti Enterprises, Inc. ("Corradetti, Inc."), Exporting, Memco Trading Co., Inc. ("Memco"), and R.A.M. Packaging ("R.A. M."), all of which are located at the same address.

(2) There is a "pervasive commingling" of the assets of these entities and they are run as a "single economic enterprise."

(3) Associates organized Exporting with capitalization of $2,500 and remains its sole stockholder.

(4) Coppersmith, Bernstein and Corradetti are the officers and directors of both Associates and Exporting and the managing partners of R.A.M.

(5) Exporting has never had any substantial business since its inception, except for the single wrongful transaction with the plaintiffs, and no significant assets were conveyed to it by the parent corporation.

(6) Exporting was grossly undercapitalized from its inception and has been "insolvent since the beginning."

(7) Exporting maintains no inventory, no books, no business records and no "viable bank checking account."

(8) R.A.M. paid for the payroll and benefits of Exporting and the other corporations as well as for their legal fees.

(9) Corradetti, Inc. was billed for all of the telephone and telex expenses of Exporting.

(10) The "directors and executives of ... [Exporting] did not act independently in the interest of the subsidiary but took their orders from the parent corporation."

(11) Exporting was used by this single economic enterprise "as an instrument of fraud."

These allegations must be read in the context of the further allegation that Exporting, with less than $500 in total assets, entered into a $44,000,000 transaction with plaintiffs and of the fraud claims raised in

---

**6.** The entire controversy doctrine does not bar this suit to collect the judgment obtained in the first action. *Bates Marketing Associates, Inc. v.* *Lloyd's Electronics, Inc.,* 190 N.J.Super. 502, 464 A.2d 1142, 1144–45 (App.Div.), *certif. granted,* 94 N.J. 583, 468 A.2d 222 (1983).

count one against Corradetti, Coppersmith and Bernstein. When so read, we believe count two cannot be dismissed as failing to state a claim. Plaintiffs' complaint expressly alleges that Coppersmith, Bernstein and Corradetti, through their "single economic enterprise," used the corporate form of Exporting to defraud the plaintiffs. It then goes on to provide sufficient supporting details to prevent one from disregarding this allegation as merely conclusory pleading. Under these circumstances it was error to grant the defendants' motion to dismiss.

█ The district court's contrary conclusion was based largely on its willingness to overlook Exporting's allegedly inadequate capitalization. Because Exporting, a Domestic International Sales Corporation ("DISC") organized pursuant to 26 U.S.C. §§ 992–97, met the requirements for capitalization and organization set forth in 26 U.S.C. § 992(a)(1)(C), the district court believed that its capitalization was necessarily adequate. We are unwilling to hold, however, that Congress, when it established the minimum capitalization of a DISC, intended to immunize from liability anyone who utilized a minimally capitalized DISC to perpetrate a fraud. If it turns out that plaintiffs knew that they were dealing with a DISC, that fact will be relevant in determining whether the defendants are guilty of fraud, but that determination should be made in the context of all the facts and is not controlled by the single fact that Exporting's capitalization met the minimum permissible capitalization required for a DISC.

*In re Farkar Co. and R.A. Hanson DISC, Ltd.*, 441 F.Supp. 841 (S.D.N.Y. 1977), *aff'd in part* 583 F.2d 68 (2d Cir. 1978), *modified* 604 F.2d 1 (2d Cir.1978), is instructive on this issue. That case involved the question of whether a parent company was bound by an arbitration agreement signed by its DISC. The district court, applying Washington law, found that the DISC was so closely related to its parent as to justify treating them as one.[7]

The Second Circuit affirmed. It reserved the question of which body of law applied to this issue because it found that "under any body of applicable law the result would be the same, ... [t]he corporate veil was so diaphanous that it did not even require piercing." 583 F.2d at 71.

We agree with the Second Circuit. The issue of whether the corporate veil of a DISC can be pierced is primarily a question of fact. Plaintiffs have alleged sufficient facts to state a claim and should be permitted to proceed with discovery to further develop the factual record.

█ Finally, the district court also concluded that plaintiffs were collaterally estopped from asserting their count two claims because they had litigated the veil piercing "issue in the context of their motion to amend the caption of the previous action." We find this reliance on principles of issue preclusion misplaced. The motion to amend was filed in May, 1983, over a year after entry of judgment in the first case. The district court refused to permit the amendment on the grounds that plaintiffs had been aware of the financial condition of Exporting prior to trial and that it would be improper "to add new defendants and then purportedly hold those defendants

---

7. Hanson, DISC is the barest shell, an alter ego of Hanson, Inc., whose existence as a barrier to the determination of Hanson, Inc.'s responsibility—whatever it may be—would constitute a "fraud" ... Hanson, DISC is wholly owned by Hanson, Inc. Its officers and directors are literally identical to those of the parent. It has no employees: the personnel of Hanson, Inc. perform all of Hanson, DISC's functions. Hanson DISC has no inventory and no office. In sum, the DISC is nothing more than a "paper" sales subsidiary through which the parent conducts its export business; and even for that purpose it does not employ its own distinct sales force, but rather uses employees of the parent. To all but the IRS (which recognizes a distinction between the subsidiary and the parent for tax purposes only), Hanson, Inc., and Hanson DISC are identical.

441 F.Supp. at 845–46 (citations omitted).

responsible for a verdict rendered in a lawsuit to which they had no opportunity to defend themselves." Accordingly, the district court had no occasion to address the issue of whether Exporting's corporate form should be disregarded.

We therefore reinstate plaintiffs' second count.

### D. CONSPIRACY

The district court dismissed plaintiffs' conspiracy count on the ground that, because plaintiffs were precluded from asserting their fraud claims, there was no tort upon which to predicate a conspiracy claim. Because we have reinstated the fraud claims, the conspiracy to defraud claim must be reinstated as well.[8]

A further word is in order with respect to defendants Bernard Weinstein and Philber Sales Corporation, t/a Bernie Weinstein. Both filed motions for summary judgment with their motions to dismiss and both claimed to have been granted summary judgment by the district court. This claim is unsupported by the record, however. We hold only that counts three and four state claims against these defendants upon which relief can be granted. Because the district court did not decide whether the affidavits supporting their alternative motion entitled them to summary judgment, we express no opinion on that issue.

### E. PUNITIVE DAMAGES

Finally, because plaintiffs' substantive counts have been reinstated, it is necessary also to reinstate their claim for punitive and exemplary damages.

### III.

The judgment below will be reversed and the case will be remanded for further proceedings consistent with this opinion.

---

**8.** Plaintiffs cannot sue Exporting on this count for the same reason they cannot sue Exporting on count one. *See supra,* n. 3.