187 N.J. Super. 96 (1982)
453 A.2d 904
MAGLIFICIO ALLESANDRA, MAGLIFICIO ALBA DI ABATI LUIGI MAGLIFICIO CAMELIA, S.R.L., PLAINTIFFS-APPELLANTS,
v.
ARCH GROSS, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued September 14, 1982.
Decided November 1, 1982.
*98 Before Judges MICHELS, PRESSLER and TRAUTWEIN.
*99 Barry L. Eisenberg argued the cause for appellants (Lasser, Hochman, Marcus, Guryan & Kuskin, attorneys; Richard L. Zucker of counsel and on the brief).
No brief was filed on behalf of respondent.
The opinion of the court was delivered by MICHELS, P.J.A.D.
Plaintiffs Maglificio Allesandra (Allesandra), Maglificio Alba Di Abati Luigi (Luigi), and Maglificio Camelia, S.R.L. (Camelia), appeal from a judgment of the Law Division dismissing their damage action against Arch Gross (Gross).
The facts, as they appear from the record, are that plaintiffs three Italian clothing manufacturers, sold and delivered women's clothing and apparel to Highlander Sportswear, Inc. (Highlander), a New Jersey corporation. The merchandise was sold and shipped to Highlander on open account. While the record is not entirely clear, this arrangement was apparently satisfactory to the parties for some period of time. However, between August 5 and October 7, 1976 Allesandra sold and delivered to Highlander merchandise having a total cost of $100,408.99 without receiving any payment, and the relationship between the parties broke down. On October 14, 1976 Highlander delivered three postdated checks to Allesandra in the total sum of $24,531.10. By November 24, 1976 Highlander was still indebted to Allesandra in the total sum of $75,877.89. In order to bring its account up to date and to assure continued shipment of merchandise, Highlander delivered to Allesandra a series of six $10,000 promissory notes and a check in the sum of $15,877.89. Two of the notes were due in December 1976, two in January 1977 and two in February 1977, and each of the six notes was personally indorsed by Gross, the president and principal stockholder of Highlander. Thereafter, on November 30, 1976, following the execution and delivery of the six notes and check, Allesandra sold and delivered to Highlander additional merchandise having a total cost of $53,981.16. Highlander did not pay for this merchandise, and neither the $15,877.89 check nor any of *100 the six $10,000 notes indorsed by Gross was honored when presented for payment.
On April 18, 1977 Highlander filed a petition for relief from its creditors in accordance with chapter XI of the Bankruptcy Act in the United States District Court for the Southern District of New York listing, among its many creditors, the three plaintiffs. Plaintiffs immediately instituted this action in the Law Division against Gross and then filed a proof of claim against Highlander in the bankruptcy proceedings in the federal court. In their proof of claims plaintiffs claimed that $154,390.15 was owed them for goods sold and delivered, of which sum $60,000 was evidenced by the six promissory notes made by Highlander and indorsed by Gross. Highlander objected to plaintiff's claim and filed a counterclaim for an affirmative judgment in the bankruptcy court in the sum of $1,150,000 based on the alleged poor quality of the merchandise and plaintiffs' failure to deliver the merchandise on time and in the quantities ordered.
In the first three counts of the complaint filed in this action, plaintiffs essentially charged Gross with fraud and concealment in failing to disclose to them the true financial condition of Highlander when the merchandise was ordered in order to induce plaintiffs to sell the same on credit. They also alleged that they relied upon the financial soundness of Highlander when they sold and shipped the merchandise to Highlander, as a result of which they were damaged. Allesandra claimed damages in the total sum of $154,390.15, Luigi claimed damages in the sum of $11,753.35 and Camelia claimed damages in the total sum of $3,096.75. In the fourth count of the complaint Allesandra sought to recover $60,000  the total amount due on the six $10,000 promissory notes made by Highlander and personally indorsed by Gross. Gross denied that he was under any liability or obligation to plaintiffs and raised, among other separate defenses to the fourth count, that the merchandise sold and shipped to Highlander was of poor quality and therefore that there was a failure of consideration for the six promissory notes. Gross also filed a counterclaim against plaintiffs seeking to *101 recover damages for (1) the diminution in the value of his stock in Highlander due to the alleged poor quality of and failure to timely deliver the merchandise sold to Highlander, and (2) alleged malicious use and abuse of process.
Gross moved to dismiss the first three counts of the complaint on the ground that they failed to state a claim against him upon which relief could be granted. Plaintiffs thereupon filed cross-motions to dismiss the counterclaim on the same ground, and Allesandra moved for summary judgment on the fourth count. The trial judge granted Gross's motion to dismiss the first three counts of the complaint, in part reasoning that:
In this matter there are no circumstances which constitute any relationship between the parties other than the usual commercial relationship of buyer and seller with the buyer being the president of a corporation. In view of the fact that the plaintiff had no objection to dealing with a corporation and selling it goods on open account apparently without asking for a financial statement or without seeking any independent information as to its financial standing, it must take the law as it presently exists. While there is a strong judicial trend towards consumerism and the protection of parties to commercial transactions from overreaching by one party with respect to the other party, we have not reached the point where in a commercial transaction one corporation is required to disclose to another corporation that it may or may not be in a position to pay its bills. Many avenues of inquiry are available to a party to a commercial transaction if it seeks protection. The goods could have been shipped but not delivered until paid for. This is merely one example of a well known commercial safeguard. There are many more. The plaintiff did not avail himself of any and relied upon ultimate payment by the corporation. To charge an officer or an agent of the corporation personally with the responsibility for payment would reduce commerce to a shambles. The law imposes no such responsibility.
The trial judge also dismissed the counterclaim against plaintiffs, but reserved decision on Allesandra's motion for summary judgment to enable the parties to brief the matter further. Thereafter the judge denied the motion, concluding that there were genuine issues of material fact as to the quality of the merchandise and whether this represented a lack of consideration for the Highlander promissory notes indorsed by Gross, which he (Gross) could interpose as a defense.
Prior to the trial of this action Highlander's objection to plaintiffs' proof of claim filed in the bankruptcy court came on for hearing in the federal court. Plaintiffs did not appear, and *102 Highlander's attorney, after explaining Highlander's objection to plaintiffs' claim and urging Highlander's counterclaim for affirmative relief on the basis of the alleged poor quality and untimely delivery of the merchandise, moved for (1) expungement of plaintiffs' claim by virtue of the latter's default, and (2) permission to withdraw its affirmative counterclaim without prejudice to the institution of an independent action. No evidence was presented in the bankruptcy hearing either with respect to Highlander's objection to plaintiffs' proof of claim or in support of its affirmative counterclaim for damages. Highlander's motion was granted and plaintiffs' proof of claim was expunged because of their failure to appear and prosecute this claim.
This action then came on for trial in the Law Division. The parties stipulated to the pertinent facts and offered in evidence several exhibits, including the six promissory notes made by Highlander and personally indorsed by Gross. No testimony was taken or evidence presented in support of Gross's contention that there was a lack of consideration for the promissory notes. Rather, Gross argued that Allesandra was barred from pursuing him on his indorsement of the six promissory notes by virtue of the judgment entered in the bankruptcy proceeding. The trial judge held, on principles of collateral estoppel, that the judgment of the bankruptcy court which found Highlander not liable to plaintiffs on the Highlander promissory notes barred Allesandra's suit against Gross as the indorser of the notes. Plaintiffs appeal.

I
Plaintiffs first contend that the trial judge erred in granting Gross's motion to dismiss the first three counts of the complaint which charged fraud and concealment, on the ground that they failed to state a claim against Gross upon which relief could be granted. We disagree and affirm the dismissal of these three counts of the complaint substantially for the reasons expressed by Judge Thompson in his letter opinion of November 9, 1977, above quoted.

*103 II
Allesandra contends that the trial judge erred in dismissing the fourth count of the complaint on the ground that the order of the bankruptcy court collaterally estopped it from pursuing Gross on his personal indorsement of the Highlander notes. It argues that the judge erred in concluding that the bankruptcy court found as a fact that Highlander was not liable to plaintiffs on the notes and that it was precluded by the doctrine of collateral estoppel from maintaining this action against Gross. In support of this argument Allesandra emphasizes that Highlander's liability to plaintiffs was not adjudicated on the merits and that the bankruptcy court made no finding that Highlander was not liable to plaintiffs on the notes. Rather, the only issue determined in the bankruptcy proceeding was that plaintiffs, including Allesandra, were not entitled to share in any distribution made pursuant to the arrangement under chapter XI of the Bankruptcy Act because they failed to appear and prosecute their respective claims.
The doctrine of collateral estoppel is a branch of the broader law of res judicata that bars relitigation of any issue actually determined in a prior action between the same parties and their privies involving a different claim or cause of action. State v. Gonzalez, 75 N.J. 181, 186 (1977); United Rental Equip. Co. v. Aetna Life & Cas. Ins. Co., 74 N.J. 92, 101 (1977); Mazzilli v. Accident, etc. Cas. Ins. Co., etc., 26 N.J. 307, 313-314 (1958); N.J. Mfrs. Ins. Co. v. Brower, 161 N.J. Super. 293, 297 (App.Div. 1978); Miraglia v. Miraglia, 106 N.J. Super. 266, 271 (App.Div. 1969); Public Service Elec. and Gas Co. v. Waldroup, 38 N.J. Super. 419, 425-426 (App.Div. 1955). Although collateral estoppel is a branch of res judicata, the doctrines are distinct. Although both have the objective of judicial finality, there is a crucial difference between the two. This distinction is explained in Mazzilli v. Accident, etc., Cas. Ins. Co., etc., supra, as follows:
The doctrine of collateral estoppel or estoppel by judgment is an extension of the principle of res judicata, but there is a fundamental distinction between the two principles which must be borne in mind. The distinction is stated in the much-cited case of City of Paterson v. Baker, 51 N.J. Eq. 49, at page 53 (Ch. 1893), wherein the court said:

*104 "There is a plain difference, resting on obvious considerations of justice, as was held in Cromwell v. Sac County, 94 U.S. 351, 24 L.Ed. 195, and again in Bissell v. Spring Valley, supra [124 U.S. 225, 8 S.Ct. 495, 31 L.Ed. 411], between the effect of a judgment, as a final and conclusive determination of the rights of the parties, when it is set up in a second action resting on the same claim or demand on which the first was founded, and its effect when it is set up in a subsequent litigation between the same parties, founded upon a different claim or cause of action. In the first, where the second suit is based upon the same claim or demand involved in the first, the judgment in the first must be treated as a finality, `concluding' in the language of Mr. Justice Field, in Cromwell v. Sac County, supra (94 U.S. at page 352), `parties and those in privity with them, not only as to every matter which was offered and received to sustain or defeat the claim or demand, but as to any other admissible matter which might have been offered for that purpose. Thus, for example, a judgment rendered upon a promissory note is conclusive as to the validity of the instrument and the amount due upon it, although it be subsequently alleged that perfect defences actually existed, of which no proof was offered, such as forgery, want of consideration, or payment. * * * But where the second action is upon a different claim or demand, but between the same parties, the judgment in the prior action operates as an estoppel only as to those matters in issue or points controverted, upon the determination of which the finding or verdict was rendered. In all cases, therefore, where it is sought to apply the estoppel of a judgment rendered upon one cause of action to matters arising in a suit upon a different cause of action, the inquiry must always be as to the point or question actually litigated and determined in the original action,  not what might have been thus litigated and determined, ' for it is only upon such matters as were actually litigated and determined that the judgment is conclusive." [26 N.J. at 313-314]
Here, it is apparent that the doctrine of res judicata does not apply as a bar to Allesandra's action against Gross. Allesandra's claim in this action is based on Gross's indorsement of the notes, which is separate and distinct from the cause of action asserted against Highlander in the bankruptcy proceedings. Thus, if there is any preclusion of the relitigation of an issue by reason of the judgment in the bankruptcy proceedings, it is by virtue of principles of collateral estoppel.
Until recently collateral estoppel was available only where there was mutuality of estoppel. The requirement of mutuality is no longer rigidly adhered to in this State. We have adopted the more flexible modern view, formulated by the American Law Institute as follows:
§ 29. Issue Preclusion in Subsequent Litigation with Others
A party precluded from relitigating an issue with an opposing party, in accordance with §§ 27 and 28, is also precluded from doing so with another *105 person unless the fact that he lacked full and fair opportunity to litigate the issue in the first action or other circumstances justify affording him an opportunity to relitigate the issue.
[Restatement, Judgments 2d, § 29 (1980)]
See State v. Gonzalez, 75 N.J. 181, 188-192 (1977); United Rental Equip. Co., supra, 74 N.J. at 100; N.J. Mfrs. Ins. Co. v. Brower, supra, 161 N.J. Super. at 298-299. See, also, McAndrew v. Mularchuk, 38 N.J. 156, 161 (1962); Continental Can Co. v. Hudson Foam Latex Prod., 129 N.J. Super. 426, 429-430 (App. Div. 1974).
As a result of the virtual abandonment of the principle of rigid mutuality, Gross did not have to be a party to the prior bankruptcy proceedings to benefit from any collateral estoppel effect of the judgment entered in that matter. See Restatement, Judgments 2d, § 29 (1982). However, for the doctrine to apply it must be shown that:
(1) the issue decided in the prior adjudication was identical with the one presented in the subsequent action, (2) the prior action was a judgment on the merits, and (3) the party against whom it was asserted had been a party or in privity with a party to the earlier adjudication. [State v. Gonzalez, supra, 75 N.J. at 189.]
Furthermore, there are two facets to the requirement that the judgment in the prior action be on the merits. First, collateral estoppel applies only to matters or facts that are directly in issue and are necessary to support the judgment rendered in the prior action. The doctrine does not extend to "any matter which came collaterally in question, ... nor ... any matter to be inferred by argument from the judgment." Mazzilli v. Accident & Cas. Ins. Co., etc., supra, 26 N.J. at 315-316, quoting from Mullaney v. Mullaney, 65 N.J. Eq. 384, 388 (E. & A. 1903).
The second aspect of the requirement that the judgment be on the merits is that the factual issue must actually have been litigated and determined. Robinson-Shore Develop. Co. v. Gallagher, 26 N.J. 59, 68 (1958). This requirement is explained fully in comments d and e to § 27 of the Restatement, Judgments 2d, as follows:
d. When an issue is actually litigated. When an issue is properly raised, by the pleadings or otherwise, and is submitted for determination, and is determined, *106 the issue is actually litigated within the meaning of this Section. An issue may be submitted and determined on a motion to dismiss for failure to state a claim, a motion for judgment on the pleadings, a motion for summary judgment (see Illustration 10), a motion for directed verdict, or their equivalents, as well as on a judgment entered on a verdict. A determination may be based on a failure of pleading or of proof as well as on the sustaining of the burden of proof.
e. Issues not actually litigated. A judgment is not conclusive in a subsequent action as to issues which might have been but were not litigated and determined in the prior action. There are many reasons why a party may choose not to raise an issue, or to contest an assertion, in a particular action. The action may involve so small an amount that litigation of the issue may cost more than the value of the lawsuit. Or the forum may be an inconvenient one in which to produce the necessary evidence or in which to litigate at all. The interests of conserving judicial resources, of maintaining consistency, and of avoiding oppression or harassment of the adverse party are less compelling when the issue on which preclusion is sought has not actually been litigated before. And if preclusive effect were given to issues not litigated, the result might serve to discourage compromise, to decrease the likelihood that the issues in an action would be narrowed by stipulation, and thus to intensify litigation.
In the case of a judgment entered by confession, consent, or default, none of the issues is actually litigated. Therefore, the rule of this Section does not apply with respect to any issue in a subsequent action. The judgment may be conclusive, however, with respect to one or more issues, if the parties have entered an agreement manifesting such an intention.
While § 27 of the Restatement, Judgments 2d, deals with the conclusive effect of issues of law and fact previously litigated between the same parties, the principles discussed under comments d and e are also applicable to the relitigation of issues with persons other than the parties to the prior litigation. See Restatement, Judgments 2d, § 29, comment a. The principles set forth in § 29 are still adhered to by our courts. See, e.g., State v. Gonzalez, supra, 75 N.J. at 190, n. 5; United Rental Equip. Co. v. Aetna Life & Cas. Ins. Co., supra, 74 N.J. at 101. See, also, Matter of McMillan, 579 F.2d 289, 292-293 (3 Cir.1978).
Here, the issue raised in defense of Allesandra's claim against Gross is that the alleged poor quality and late delivery of the merchandise sold to Highlander constituted a lack of consideration for the six promissory notes  the underlying obligation that was sought to be enforced in this action. This issue, although raised in the bankruptcy proceeding, was never actually litigated or determined. No testimony was taken or evidence *107 offered in the bankruptcy proceeding on this issue and no decision with respect thereto was ever rendered by the bankruptcy judge. On the contrary, Allesandra's proof of claim was expunged solely by virtue of its default. Hence, there was never a judgment on the merits, which is a prerequisite to the successful application of the doctrine of collateral estoppel.
Therefore, the trial court erred in applying the doctrine as a bar to Allesandra's claim against Gross as the indorser of the Highlander notes.
Accordingly, judgment in favor of Gross on the fourth count of the complaint is reversed and the matter is remanded to the trial court for a trial of the issues raised by that count of the complaint and Gross's answer thereto.

III
By way of summary, that portion of the judgment of the Law Division in favor of Gross, dismissing the first, second and third counts of the complaint is affirmed, and that portion of the judgment dismissing the fourth count is reversed and the matter remanded for trial. We do not retain jurisdiction.