GREGORY MARKETING CORPORATION AND DANIEL SCHER, PLAINTIFFS v. WAKEFERN FOOD CORPORATION AND APPLE MARKETING CO-OP, INC., DEFENDANTS.

Superior Court of New Jersey
Law Division Essex County

Decided December 16, 1985.

608

*Bruce H. Nagel* for plaintiffs (*Meth, Nagel, Rice, Woehling & Bausch,* attorneys; *Bruce H. Nagel and Randee M. Matloff* on the brief).

*Roger B. Kaplan* for defendant Wakefern Food Corporation (*Wilentz, Goldman and Spitzer,* attorneys; *Weil, Gotshal and Manges* of the New York bar of counsel)

*Louis A. Ruprecht* for defendant Apple Marketing Co-op, Inc. (*McDermott, McGee & Ruprecht,* attorneys).

VILLANUEVA, J.S.C.

Defendants move for summary judgment to dismiss one count of plaintiffs' complaint.

The issues are whether plaintiffs' complaint alleging price discrimination sets forth a cause of action under the New Jersey Antitrust Act, *N.J.S.A.* 56:9–3, and whether plaintiffs

are barred from maintaining this action under the doctrines of *res judicata* and collateral estoppel, because an identical claim made under federal antitrust statutes, containing the same statutory provisions, was dismissed in the United States District Court for lack of antitrust standing.

The court holds plaintiffs' claims under the act are barred by the dismissal of their prior federal action under the doctrines of *res judicata* and collateral estoppel. In addition, plaintiffs' complaint fails to state a cause of action under the New Jersey Antitrust Act.

The first count of plaintiffs' complaint[1] alleges a cause of action against Wakefern Food Corporation ("Wakefern") for illegal price discrimination in violation of § 3 of the New Jersey Antitrust Act (the "New Jersey act"), *N.J.S.A.* 56:9–3. Plaintiffs allege that Wakefern received preferential prices on apple juice products it purchased from defendant Apple Marketing Co-op, Inc. ("Apple Marketing"), formerly Red Cheek, Inc. ("Red Cheek").

Specifically, defendants contend that this state complaint is merely a rerun of plaintiffs' complaint under the federal Robinson-Patman Act, 15 *U.S.C.A.* § 13 et seq., which was dismissed by the United States District Court for the District of New Jersey ("district court"), and, in any event, this count fails to state a cause of action for two reasons: First, the New Jersey act does not regulate, nor provide any remedy for, alleged price discrimination. The act contains no provision remotely resembling the Robinson-Patman Act, but rather is modeled after the federal Sherman Antitrust Act, 15 *U.S.C.A.* § 1 et seq., which neither regulates nor prohibits price discrimination; and secondly, plaintiffs' price discrimination claim is barred under the doctrines of *res judicata* and collateral estoppel because the

---

[1]The Complaint also alleges a claim for breach of contract against Red Cheek (Second Count) and a claim for tortious interference with contract and prospective business advantage against Wakefern (Third Count).

district court dismissed on the merits the exact same antitrust claim that plaintiffs assert here.

## DESCRIPTION OF THE PARTIES.

Plaintiff Gregory Marketing Corporation is a food brokerage firm which served as a broker for Red Cheek for a number of years. Plaintiff Daniel Scher is an officer of Gregory and its majority shareholder and sues solely in that capacity.

Defendant Wakefern is a corporation organized on the cooperative plan that provides certain services, including bulk purchasing, for its members who own and operate "Shop-Rite" supermarkets.

Defendant Apple Marketing Co-op, Inc., formerly Red Cheek, Inc. ("Red Cheek"), a manufacturer of apple juice products, had a long standing agreement with Gregory to introduce or otherwise broker Red Cheek products in an assigned territorial market.

## THE PRIOR FEDERAL ACTION.

The present action is virtually identical in factual allegations to a prior federal action that was brought in the United States District Court for the District of New Jersey ("federal action"), seeking damages arising out of the alleged price discrimination scheme of defendants. Plaintiffs sought damages based upon violations of federal antitrust statutes as well as a variety of state claims.

Both actions are being litigated by the same plaintiffs, against the same defendants, and, most importantly, concern the same alleged transactions and occurrences.

## THE PRICE DISCRIMINATION CLAIMS.

The federal action and the present action contain identical price discrimination claims against Wakefern. Whereas the claim in the federal action sought relief under both the federal

Robinson-Patman Act and the New Jersey Antitrust Act, the claim in the instant action seeks relief under only the New Jersey act.

According to plaintiffs' allegations in both actions, "Wakefern utilized its dominant position in the marketplace to induce Red Cheek to discriminate in price between different purchasers of products of like grade and quality." Specifically, plaintiffs allege that: (1) from February through July 1984, while all other Red Cheek customers were paying $11.85 a case for Red Cheek's 40 ounce, natural apple juice, Wakefern was allegedly receiving one case gratis for each case purchased; and (2) from June through August 1984, Wakefern allegedly received a $1.86 discount on Red Cheek's one-half gallon clear and natural promotion when other Red Cheek customers were receiving no discount. Plaintiffs allege that these allegedly discriminatory pricing practices were intended to injure competition in the marketplace and damage Gregory; and that Wakefern knew that the price discrimination was not cost justified.

Plaintiffs further allege that when Scher became aware of the discriminatory pricing practices, he then informed Red Cheek of the wrongful nature of these alleged practices, and Red Cheek nonetheless directed him to supply customers who inquired about the practices with fabricated explanations. Plaintiffs allege that Scher refused to comply with these directives and, as a result thereof, Red Cheek terminated Gregory as a broker.

## DISMISSAL OF THE FEDERAL ACTION.

The district court dismissed the federal antitrust claim in the federal action for lack of antitrust standing and lack of antitrust injury under § 4 of the Clayton Act, 15 *U.S.C.A.* § 15, which creates the federal private antitrust remedy. In doing so, the district court held:

> The claimed violation of the antitrust laws here is based on the preferential price given to Wakefern by Red Cheek. The anticompetitive effect of such actions is on those competitors of Wakefern's that did not receive the price cuts.

Plaintiffs' injuries of lower commissions and the breach of its contract are not injuries received by reason of that which made defendant's actions unlawful.

. . . .

Plaintiffs make no claim that they are customers or competitors in the competition in the sale of food. Plaintiffs are brokers and obtain a commission regardless of which food buyer uses its food brokerage services. A reduction in competition in the sale of food does not necessarily reduce their commissions. *Plaintiffs may be injured by defendants' actions, but the injury is not the type of injury that the antitrust laws were written to guard against.*

. . . .

As plaintiffs' Federal antitrust claim is their only basis for Federal jurisdiction, plaintiffs' Complaint now fails to allege any basis for Federal jurisdiction. Under *United Mine Workers v. Gibbs*, 383 *U.S.* 715 [86 S.Ct. 1130, 16 L.Ed.2d 218] (1966) the pendent State law claims must accordingly also be dismissed, including plaintiff's State Antitrust claim. And plaintiff is, therefore, relegated to the State Courts for relief on these claims. [Emphasis supplied]

Judge Ackerman refused to dismiss count three (the state antitrust claim) with prejudice. Instead, the state antitrust claim was treated like the other state law claims set forth in the federal complaint, *i.e.*, it was dismissed for lack of subject matter jurisdiction under *Fed.R.Civ.P.* 12(b)(1). Thus, no determination on that count was made on the merits. Plaintiffs' appeal of that dismissal is pending in the Third Circuit Court of Appeals.

Plaintiffs now seek to maintain the identical antitrust claim under the New Jersey act. However, the section of the state act which creates the private antitrust cause of action, *N.J.S.A.* 56:9–12(a), is the mirror image of § 4 of the Clayton Act under which the district court held plaintiffs had no standing.

## THE FIRST COUNT FAILS TO STATE A CLAIM FOR PRICE DISCRIMINATION UNDER THE NEW JERSEY ANTITRUST ACT.

Plaintiffs' complaint for alleged unlawful price discrimination fails to state a cause of action under the New Jersey act. The New Jersey act has no counterpart to the federal Robinson-

Patman Act, 15 *U.S.C.A.* § 13, and simply does not regulate discriminatory practices. *See* 1 *CCH Trade Regulation Reporter*, ¶ 3510 (listing states which have enacted price discrimination legislation). As a state deputy attorney general has written, "[t]he [state's antitrust] Act does not contain a section dealing ... with price discrimination." Frank, "An Overview of the New Jersey Antitrust Act," 108 *N.J.L.J.* 293, 305 (Oct. 1, 1981).[2]

The absence of any general price discrimination remedy is underlined by the fact that the Legislature has seen fit to enact specific price discrimination statutes for specific industries. *See, e.g., N.J.S.A.* 17:29A–4 (insurance rates); *N.J.S.A.* 33:1–89 (alcoholic beverages); *N.J.S.A.* 56:6–22 (motor fuel).[3] If a price discrimination remedy were provided by the New Jersey Act, such specified provisions would not be necessary. No comparable price discrimination statute governs the sale of apple juice or related products. Thus, plaintiffs fail to state a claim under the New Jersey Act. *See* O'Shaughnessy, "Analysis of Federal and State Antitrust Law," 101 *N.J.L.J.* 462, 463 (May 11, 1978) ("if a complaint is a pure price discrimination charge ..., the only relief available is under the federal [antitrust] statutes.").

Despite no state price-discrimination statute, plaintiffs attempt to allege a claim under § 3 of the New Jersey act, which

---

[2]In the words of one commentator: "Happily, the dark mysteries of the Robinson-Patman Act are *not* carried over into the State Act." O'Shaughnessy, "Analysis of Federal and State Antitrust Law," 101 *N.J.L.J.* 419, 423 (May 4, 1978), emphasis supplied.

[3]The Deputy Attorney General further noted:

The [Antitrust] Act does not contain a section dealing directly with price discrimination, but other statutes do. In *N.J.S.A.* 17:29A–4, rating organizations and insurers are prohibited from discriminating between risks involving essentially the same hazards and expense elements in calculating rates. *N.J.S.A.* 33:1–89 prohibits manufacturers and wholesalers of alcoholic beverages from discriminating in the price charged to retailers. It is unlawful under *N.J.S.A.* 56:6–22 for a distributor, refiner, wholesaler or supplier to discriminate in tank wagon price between retail dealers of motor fuel. [Frank, *op. cit., supra*]

parallels § 1 of the Sherman act, 15 *U.S.C.A.* § 1.[4] Neither statute provides any relief for alleged price discrimination.

The New Jersey act must be "construed in harmony" with its federal counterpart, the Sherman act.[5] The Sherman act, however, does not regulate price discrimination. *See, e.g., Crowl Distributing Corp. v. Singer Co.*, 543 *F.Supp.* 1033, 1037 (D.Kan.1982) ("price discrimination *per se* has never been considered to fall within the scope of the Sherman Act."); *State v. Mobil Oil Corp.*, 38 *N.Y.*2d 460, 463, 381 *N.Y.S.*2d 426, 428, 344 *N.E.*2d 357, 359 (Ct.App.1976) ("Price discrimination *per se* is not and never has been within the purview of the Sherman

---

[4]Section 3 of the New Jersey act provides:

> Every contract, combination in the form of trust or otherwise, or conspiracy in restraint of trade or commerce, in this State, shall be unlawful. [*N.J.S.A.* § 56:9-3]

Section 1 of the Sherman act provides:

> Every contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several states, or with foreign nations, is declared to be illegal. [15 *U.S.C.A.* § 1]

*See* O'Shaughnessy, *supra* at 423 ("Sections 3 and 4a set forth the 'guts' of the [New Jersey] Act which were lifted almost verbatim from sections 1 and 2 of the Sherman Act").

[5]Section 18 of the New Jersey Antitrust Act, *N.J.S.A.* 56:9-18, provides:

> This act shall be construed in harmony with ruling judicial interpretations of comparable Federal antitrust statutes and to effectuate, insofar as practicable, a uniformity in the laws of those states which enact it. *See State v. New Jersey Trade Waste Ass'n*, 96 *N.J.* 8, 19 (1984) (under *N.J.S.A.* 56:9-18 examination of federal law is "necessary"); *Pomanowski v. Monmouth County Board of Realtors*, 89 *N.J.* 306, 313 (1982) ("consonance between the federal and state enactments is required"); *State v. Lawn King, Inc.*, 84 *N.J.* 179 (1980) (same).

New Jersey courts look to federal interpretations of the Sherman act for guidance in interpreting the state antitrust act. *See also Lawn King, supra* at 192 ("Courts in addressing state antitrust acts patterned after the federal Sherman Act, as is the New Jersey Act, have concluded that Federal court interpretations of federal law constitute persuasive authority as to the meaning of the particular state enactments...."); *Pomanowski v. Monmouth County Bd. of Realtors*, 166 *N.J.Super.* 269, 272, n. 1 (App.Div.1979), rev'd on other grounds 89 *N.J.* 306 (1982) ("There is an extraordinary reliance on

Act"). *See also Federal Trade Comm'n v. Henry Broch & Co.*, 363 *U.S.* 166, 168, 80 *S.Ct.* 1158, 1160, 4 *L.Ed.*2d 1124, 1127 (1960). To the contrary, Congress enacted the Robinson-Patman Act—which specifically prohibits price discrimination [6]—precisely because the Sherman act and other pre-existing antitrust statutes did not cover such practices. *Crowl Distributing Corp., supra* at 1037. *See also Federal Trade Comm'n v. Henry Broch & Co., supra; Federal Trade Comm'n v. Morton Salt Co.*, 334 *U.S.* 37, 43, 68 *S.Ct.* 822, 826–827, 92 *L.Ed.* 1196, 1202 (1948); *Bouldis v. U.S. Suzuki Motor Corp.*, 711 *F.*2d 1319, 1326 (6 Cir.1983). The New Jersey Legislature, however, has not followed suit.

Plaintiffs have cited no case that truly supports their contention that such a cause of action exists. The only "authority" which plaintiffs have cited in support of the validity of a price discrimination claim under § 3 is an isolated article, which, without any analysis or citation to any authority, simply asserts that price discrimination "will continue to constitute violations of sections 3 and 4 of the 1970 Act." *See* Perrucci and Mussomeli, "New Jersey Antitrust Law; An Overview," 2 *Seton Hall Legis.J.* 134, 176, n. 257 (1977). That assertion is contrary to all applicable authority and the structure and history of the New Jersey act.

---

federal case law in connection with interpretation of the New Jersey Act . . . because that Statute itself mandates such effectuation.").

[6]The Robinson-Patman Act, 15 *U.S.C.* § 13, provides in pertinent part:

(a) It shall be unlawful for any person engaged in commerce, in the course of such commerce, either directly or indirectly, to discriminate in price between different purchasers of commodities of like grade and quality, where either or any of the purchases involved in such discrimination are in commerce, . . . and where the effect of such discrimination may be substantially to lessen competition or tend to create a monopoly in any line of commerce, or to injure, destroy, or prevent competition with any person who either grants or knowingly receives the benefit of such discrimination, or with customers of either of them.

In a case closely analogous to the present one, the New York Court of Appeals held that New York's antitrust act (the Donnelly Act)—which, like the New Jersey act, is "modeled after the Sherman Act"—does not give rise to a claim for price discrimination. *State v. Mobil Oil Corp., supra.* The court held:

Price discrimination per se is not and never has been within the purview of the Sherman Act. By the adoption of the Clayton Act in 1914 the Congress sought by supplementing the Sherman Act to prohibit price discrimination in specified circumstances. In 1936 the Clayton Act was amended in turn by the Robinson-Patman Act (49 U.S.Stat. 1526, now U.S.Code, tit. 15, § 13), *inter alia,* to provide comprehensive Federal regulation of price discrimination. It is clear to us that reference to the history of and practice under the Federal antitrust laws demonstrates that *if our [State] Act is to be considered a counterpart of the Sherman Act it does not extend to price discrimination as such.* [38 N.Y.2d at 463, 381 *N.Y.S.*2d 426, 344 *N.E.*2d 357, emphasis supplied]

The court also observed that when the New York Legislature sought to prohibit price discrimination, it—like the New Jersey Legislature—chose to do so on an industry-by-industry basis, rather than through an all-encompassing price discrimination statute. *Id.* 38 N.Y.2d at 465, 381 N.Y.S.2d at 429, 344 N.E.2d 360.

The rationale of *State v. Mobil Oil Corp.,* is on "all fours" with this case. Plaintiffs' price discrimination claim fails to state a claim under the New Jersey Antitrust Act and must be dismissed.

## PLAINTIFFS ARE BARRED FROM ASSERTING A CLAIM UNDER THE NEW JERSEY ANTITRUST ACT.

Even if § 3 of the New Jersey Antitrust Act, *N.J.S.A.* 56:9–3, could encompass a claim for discriminatory pricing, which it does not, plaintiffs' claim under the act is barred by the dismissal of the prior federal action under the doctrines of *res judicata* and collateral estoppel and by the express language of *N.J.S.A.* 56:9–18 mandating "harmony," "uniformity" and "consistency" between the state and federal antitrust laws.

Plaintiffs are here seeking to resurrect, through their state court complaint, the identical antitrust claim—involving the identical factual allegations, transactions and parties—that was rejected by the district court. That dismissal was on the merits for lack of "antitrust standing" and lack of antitrust injury.[7] Plaintiffs cannot now relitigate their antitrust claim in state court by styling their resurrected claim as one for relief under the New Jersey act, when the private remedy provision of that act is virtually identical to the federal antitrust remedy statute. (Section 4 of the Clayton Act, 15 *U.S.C.A.* § 15, creates a private antitrust remedy under federal law, and § 12(a) of the New Jersey Antitrust Act, *N.J.S.A.* 56:9–12(a), creates a private antitrust remedy under state law).

The fact that the first case decided was under the federal statute and plaintiffs now seek relief under a state statute, which is almost identical, is no bar to applying the doctrine of *res judicata.*

### A.

### *Plaintiffs' State Antitrust Claim is Barred by the Doctrine of Res Judicata.*

■ The doctrine of *res judicata* was summarized in *Roberts v. Goldner,* 79 *N.J.* 82 (1979), as follows:

A cause of action once finally determined between the parties on the merits by a tribunal having jurisdiction cannot be relitigated by those parties, or their privies, in a new proceeding. [Citations omitted] Here the facts pleaded, issues raised, relief sought and defendants involved are identical with those in [the first suit]. [at 85]

---

[7]"Antitrust standing" and "antitrust injury" are interrelated elements derived from the language of the statutory section providing a private remedy under the antitrust laws, Section 4 of the Clayton Act, 15 *U.S.C.A.* § 15. *See Blue Shield of Virginia v. McCready,* 457 *U.S.* 465, 476–478, 483–484, 102 *S.Ct.* 2540, 2546–2547, 2550–2551, 73 *L.Ed.*2d 149 (1982); *Associated General Contractors v. California State Council of Carpenters,* 459 *U.S.* 519, 103 *S.Ct.* 897, 74 *L.Ed.*2d 723 (1983), *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.,* 429 *U.S.* 477, 489, 97 *S.Ct.* 690, 697, 50 *L.Ed.*2d 701 (1977).

In *Federated Department Stores, Inc. v. Moitie*, 452 *U.S.* 394, 101 *S.Ct.* 2424, 69 *L.Ed.*2d 103 (1981), the Supreme Court held that a plaintiff's state law antitrust claim was barred by *res judicata* because there was a prior federal court judgment dismissing plaintiff's federal antitrust suit that was based on the same factual allegations. 452 *U.S.* at 398–402, 101 *S.Ct.* at 2427–2429.[8]

In *Moitie*, plaintiff's federal antitrust claim had been dismissed by the federal court on the ground that plaintiff, as a consumer, did not suffer a compensable antitrust injury under § 4 of the Clayton Act. Plaintiff then instituted a new action in state court, alleging the same facts as in the federal action, but he asserted an antitrust claim under the California Antitrust Act, as well as state common law claims for unfair competition, fraud and restitution. The state court action was removed to federal court, which dismissed it on the ground of *res judicata* because it "involved the 'same parties, the same alleged offenses, and the same time periods' as" the first action. 452 *U.S.* at 396, 101 *S.Ct.* 2426. The Supreme Court affirmed the district court holding that, based on the "origins and substance" of the two complaints, plaintiff simply recast its "essentially federal law claim as state-law claims." 452 *U.S.* at 397, n. 2, 101 *S.Ct.* at 2427, n. 2.

The Supreme Court in *Moitie* held that the state antitrust claim sought merely to relitigate plaintiff's federal antitrust claim previously dismissed by the federal court, and was therefore barred by the doctrine of *res judicata:*

[W]e do not see the grave injustice which would be done by the application of accepted principles of res judicata. 'Simple justice' is achieved when a complex body of law developed over a period of years is even-handedly applied. The doctrine of res judicata serves vital public interests beyond any individual judge's ad hoc determination of the equities in a particular case. There is

---

[8]It is well established that the meaning, scope and effect of a federal court judgment is a matter of federal law. *See Aerojet General Corp. v. Askew*, 511 *F.*2d 710, 716–718 (4 Cir.), *cert. den.* 423 *U.S.* 908, 96 *S.Ct.* 210, 46 *L.Ed.*2d 137 (1975); *Kern v. Hettinger*, 303 *F.*2d 333, 340 (2 Cir.1962).

simply no principle of law or equity which sanctions the rejection by a federal court of the salutary principle of res judicata. [*Id.* at 401, 101 *S.Ct.* at 2429]

Indeed, in *Moitie,* the doctrine of *res judicata* was applied notwithstanding an intervening Supreme Court decision which demonstrated that the dismissal of the initial federal action was, in retrospect, legal error.

Another case directly on point is *Salveson v. Western States Bankcard Association,* 731 *F.*2d 1423, 1433 (9 Cir.1984), in which summary judgment on plaintiff's federal antitrust claim in federal court was held to bar a subsequent claim under the state antitrust act. While recognizing that state antitrust laws "are not preempted by the federal antitrust laws," 731 *F.*2d at 1432, the Court of Appeals held:

[In *Moitie*], having elected to 'pitch' their pleadings under the federal statute, and having suffered summary judgment ... appellants' antitrust claims became subject to a bar by judgment which was an extensive as those claims could be deemed to be well pleaded ... Analytically, therefore, the judgment bar extended to the issues framed, not to the statutory labels invoked.

. . . .

*The federal judgment has extinguished the substance of appellants' antitrust claims, finally and conclusively.* [*Id.* at 1433; emphasis supplied]

*See also Woods Exploration & Producing Co. v. Aluminum Company of America,* 438 *F.*2d 1286, 1312–23, 1315 (5 Cir. 1971) (*res judicata* precludes litigation of state antitrust claim in state court based on judgment rendered in federal court on federal antitrust claim if state and federal claims involve "substantially the same wrongs measured by similar standards of liability").

*Moitie* is completely dispositive of plaintiffs' state antitrust claim herein. Accordingly, plaintiffs' state antitrust claim is barred by the principle of *res judicata.*

B.

*Plaintiffs' State Antitrust Claim is also Barred by Doctrine of Collateral Estoppel.*

■ Plaintiffs' state antitrust claim is also barred by the doctrine of "collateral estoppel," which precludes relitigation of

the same issues of fact or law actually decided in a prior action between the same parties.

The district court held, as a matter of law, that plaintiffs lacked "antitrust standing" to assert their antitrust claims under § 4 of the Clayton Act, 15 *U.S.C.A.* § 15, which provides a private federal remedy for "any person who shall be injured in his business or property by reason of anything forbidden in the antitrust laws." Plaintiffs now seek to pursue a private antitrust remedy for the exact same claim under § 12(a) of the New Jersey act. Section 12(a) creating the state private right of action, is virtually identical to § 4 of the Clayton Act. As a matter of law, because the district court held that plaintiffs lack "antitrust standing" under the Clayton act, they also lack "antitrust standing" under the New Jersey act.

Collateral estoppel bars relitigation in a subsequent action of any issue of law or fact actually determined in a prior suit between the same parties. *Allesandra v. Gross*, 187 *N.J.Super.* 96, 103 (App.Div.1982); *State v. Gonzalez*, 75 *N.J.* 181 (1977); *Mazzilli v. Accident & Casualty Ins. Co.*, 26 *N.J.* 307, 313–314 (1958).

New Jersey follows precisely the formulation developed in the *Restatement, Judgments* 2d, § 27, as follows:

When an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, the determination is conclusive in a subsequent action between the parties, whether on the same or a different claim. [at p. 250]

This rule precludes relitigation of issues actually litigated and determined in the first action. *Restatement, Judgments* 2d, § 27, Comment (b). Preclusion applies to issues of "evidentiary fact," of "ultimate fact," or of "law." *Id.*, Comment (c). Under the rule, a judgment is "final" even if pending on appeal. *Restatement, Judgments* 2d, § 13, Comments (b) and (f), § 16, Comments (a), (b) and (c). *See also Southern Pacific Communications Co. v. AT & T Co.*, 740 *F.*2d 1011, 1018 (D.C.Cir. 1984); *Huron Holding Corp. v. Lincoln Mine Operating Co.*, 312 *U.S.* 183, 189, 61 *S.Ct.* 513, 515, 85 *L.Ed.*2d 725, 730 (1941).

Preclusion of relitigation of the "antitrust standing" issue is required here because the overlaps between plaintiffs' allegations in the federal action and this action are complete and total. Both actions involve the identical factual allegations and concern the very same transactions and occurrences between the very same parties. Thus, there is a total identity between the claims here and the claims in the federal action, making the application of collateral estoppel "plainly appropriate." *Id.*, § 27, Comment (c).

The first requirement for collateral estoppel, that the issue was "actually litigated" in the first action, is clearly satisfied in this case. In order to have been "actually litigated," an issue must have been properly raised, by the pleadings or otherwise, submitted for determination, and determined. The inquiry "must always be as to the point or question actually litigated and determined in the original action." *Allesandra, supra,* 187 *N.J.Super.* at 104; *Mazzilli, supra,* 26 *N.J.* at 314. Thus, comment (d) to § 27 of the *Restatement, supra,* states:

> When an issue is properly raised, by the pleadings or otherwise, and is submitted for determination, and is determined, the issue is actually litigated within the meaning of this Section. An issue may be submitted and determined on a motion to dismiss for failure to state a claim, a motion for judgment on the pleadings, a motion for summary judgment, a motion for directed verdict, or their equivalents, as well as on a judgment entered on a verdict. A determination may be based on a failure of pleading or of proof as well as on the sustaining of the burden of proof.

The second element of collateral estoppel, that the prior determination be "essential to the judgment" in the first action, is also clearly satisfied in this case. The district court expressly stated that its holding was essential to its dismissal. This case thus falls squarely within comment (j) to § 27 of the *Restatement, supra,* which notes:

> The appropriate question, then, is whether the issue was actually recognized by the parties as important and by the trier as necessary to the first judgment. If so, the determination is conclusive between the parties in a subsequent action....

In *Robinson-Shore Development Co. v. Gallagher,* 26 *N.J.* 59, 71–72 (1958), our Supreme Court held that when the prior

decision of a court states that its determination of an issue is necessary to that court's prior judgment, the issue was "essential" to the prior judgment within the meaning of the rule. *See also Ettin v. Ava Truck Leasing, Inc.*, 53 *N.J.* 463, 480 (1969) (even when prior judgment could have rested on one or more of several grounds, if prior decision expressly relies on determination, that determination is conclusive and binding in subsequent action); *Washington Tp. v. Gould*, 39 *N.J.* 527, 533 (1963) (when prior court "directly determines a right, question or fact distinctly put in issue, such judgment estops the parties"); *68th Street Apts., Inc., v. Lauricella*, 142 *N.J.Super.* 546, 550 (Law Div.1976), aff'd 150 *N.J.Super.* 47 (App.Div.1977) (finding by receiver, confirmed by the court, in prior action which was held by receiver and court to be essential to judgment was binding in subsequent action); *McAlpine v. Garfield*, 137 *N.J.L.* 197, 198–199 (E. & A.1948), aff'g 25 *N.J.Misc.* 477 (Sup.Ct.1947) (findings in prior action, relied on by prior court to enter judgment, were essential to judgment reached and were conclusive); *Credit Adjusters & Collectors Inc. v. Bergen-Essex Const. Co.*, 127 *N.J.L.* 547, 549 (E. & A.1947); *United States v. Silliman*, 167 *F.*2d 607, 617–618 (3 Cir.1948) (under New Jersey law, recitals found in court's order in prior action were essential and binding on parties in subsequent action), *cert.* den., 335 *U.S.* 825, 69 *S.Ct.* 48, 93 *L.Ed.* 379 (1948); *Lynne Carol Fashions, Inc., v. Cranston Print Works, Co.*, 453 *F.*2d 1177, 1183–84 (3 Cir.1972) (under New Jersey law, issues "actually deemed important" by court in prior action were necessary to decision in prior action establishing basis for collateral estoppel).

Here, the determination with respect to plaintiffs' lack of antitrust standing and antitrust injury was the very basis of the district court's decision dismissing the federal action. As previously noted, "antitrust standing" and "antitrust injury" are statutory elements of a private antitrust claim under § 4 of the Clayton act, which is the mirror image of § 12(a) of the New Jersey Antitrust Act, *N.J.S.A.* 56:9–12. If that legislative man-

date of "harmony," "uniformity" and consistency between the state and federal antitrust statutes is to have any meaning at all, plaintiffs are barred from relitigating here the issues of antitrust standing and injury.

## NO BASIS SHOWN FOR A STAY.

Finally, plaintiffs request that the court deny the instant motion without prejudice pending disposition by the Third Circuit Court of Appeals on the standing issue, based upon the principle of judicial economy.

Ironically, plaintiffs vigorously opposed defendants' previous motion to stay this entire action. Having done so and prevailed on that issue, plaintiffs are estopped to argue now in favor of a stay. In addition, any decision by the third circuit will have no bearing on the ground for dismissal, failure to state a claim. Thus, a third circuit decision cannot, in any way, affect the determination of that issue—*i.e.*, whether the New Jersey Antitrust Act affords a remedy for price discrimination, as alleged herein.

Second, as noted above, *res judicata* and collateral estoppel should be applied even if the final judgment in the prior action is pending on appeal. *Huron Holding Corp. v. Lincoln Mine Operating Co., supra.* While their appeal is pending, plaintiffs are not permitted to pursue a multiplicity of actions when they have already litigated the issues in one forum—the very rationale for the rule.

Accordingly, summary judgment is granted dismissing the first count of the complaint.