In re Gary HAUGEN, Debtor.

**BUTLER MACHINERY, INC., on behalf of itself and all others similarly situated, Appellant/Cross–Appellee,**

v.

**Gary HAUGEN, doing business as Haugen Construction Service, doing business as Property Investors, doing business as Haugen Farms, individually; Minot Sand & Gravel, Inc., a North Dakota corporation; Haugen Development, a North Dakota corporation; XYZ Corporation, a corporation or corporations whose true identity is presently unknown to plaintiff, Appellees/Cross–Appellants.**

Nos. 92–2581, 92–2632.

United States Court of Appeals, Eighth Circuit.

Submitted March 18, 1993.

Decided July 22, 1993.

Rehearing and Suggestion for Rehearing En Banc Denied Sept. 8, 1993.

Terry C. Smith, New Brighton, MN, argued (James H. Levy, St. Paul, MN and Terry C. Smith, on the brief), for appellant/cross-appellee.

Robert S. Rau, Minot, ND, argued (Robert S. Rau and Max D. Rosenberg, Bismarck, ND, on the brief), for appellee/cross-appellant.

1. Gary Haugen died during the pendency of the bankruptcy proceedings, and the bankruptcy proceedings are carried on by his administrators.

Before FAGG, MAGILL, and HANSEN, Circuit Judges.

MAGILL, Circuit Judge.

Butler Machinery appeals from the bankruptcy court's order fixing the amount of its claim in Gary Haugen's personal bankruptcy. Gary Haugen[1] cross-appeals from the bankruptcy court's denial of his motion for turnover of property. We affirm in part, reverse in part, and remand.

## I. BACKGROUND

The appellant, Butler Machinery, Inc. (Butler), is in the business of selling and leasing heavy machinery, such as crawler tractors and scrapers. During the early 1980s, appellee Gary Haugen was engaged in earth moving (road construction, etc.) for companies engaged in oil exploration and drilling, among other customers. Prior to 1985, Haugen Construction Services, Incorporated (HCSI), a corporation wholly owned by Haugen, entered into several heavy equipment lease agreements with Butler.

The leases went into default, and Butler sued HCSI for breach of contract. On February 13, 1985, judgment was entered in Ward County (North Dakota) court in favor of Butler and against HCSI, in the amount of $738,587.88. *Butler Mach. Co. v. Haugen Constr., Inc.,* Civil No. 51149, J. of Ward County Dist. Ct. (Feb. 13, 1985) (Jt.App. at 245) (Ward County judgment).

On June 3, 1985, HCSI filed for Chapter 11 bankruptcy (later converted into Chapter 7 after reorganization efforts failed). Butler filed its proof of claim in the amount of $821,159, representing the Ward County judgment with accrued interest until the date of HCSI's bankruptcy filing. This claim was not objected to and was allowed by the HCSI bankruptcy trustee.

In 1988, Butler, for itself and other members of the class of unsecured creditors of HCSI, commenced in the HCSI bankruptcy

For ease of communication, we will refer to Haugen as the real party in interest.

an adversary proceeding against Haugen personally, seeking a determination that HCSI was merely the alter ego of Haugen, and that Haugen was personally liable for HCSI's debts, including the Ward County judgment. On July 11, 1989, the bankruptcy court issued its report and recommendation, finding that Haugen individually, HCSI, and Minot Sand & Gravel (another of Haugen's corporations) represented one commercial enterprise, and that the two corporations were merely Haugen's alter egos. That report and recommendation was adopted in full by the district court, and judgment was entered accordingly. *In re Haugen Constr. Servs., Inc.,* 104 B.R. 1013 (D.N.D.1989) (alter ego judgment).

The federal alter ego judgment was docketed in Ward County District Court on December 26, 1989, pursuant to the North Dakota Uniform Enforcement of Foreign Judgments Act, N.D.Cent.Code Chapter 28–20.1 (1991).

Butler subsequently executed on this judgment. Pursuant to this execution, the Ward County sheriff seized a massive amount of Haugen's personal property, ranging from hand tools to heavy machinery, pigs to llamas, to satisfy the alter ego judgment. This property had to be transported prior to sale, at substantial cost. In addition, an auctioneer was retained to handle the sale. The sheriff's sale was held over a two-day period in March 1990, and realized gross proceeds of $586,870.88. After subtracting $84,769.76 in statutory fees and costs of sale, the sheriff delivered the net proceeds of $502,641.12 to Butler as judgment creditor.

The trustee in the HCSI bankruptcy moved for an order directing Butler to turn over those proceeds to the bankruptcy trustee. That motion was granted, and Butler turned over the proceeds as ordered.

Meanwhile, on April 13, 1990, Haugen individually filed a petition for relief under Chapter 11.

During the course of these events, Minot Sand & Gravel, another corporation found to be Haugen's alter ego, sued on a large account receivable owed it by Santa Fe Engineers. On June 21, 1990, Butler filed an involuntary Chapter 7 bankruptcy petition against Minot Sand. Thereafter, Minot Sand settled its litigation with Santa Fe in a net amount of $131,589.34. HCSI's trustee moved for turnover of that amount on the ground that Minot Sand was HCSI's alter ego, and the settlement proceeds were turned over to the HCSI bankruptcy estate on August 23, 1990. *In re Haugen Constr. Servs., Inc.,* No. 85–05321, Order (Bankr. D.N.D. Aug. 22, 1990) (Jt.App. at 238).

The HCSI bankruptcy trustee used the proceeds from the execution sale and the Minot Sand bankruptcy to pay various administrative expenses, including trustee's commission, and to make distributions to creditors in partial payment of claims. The trustee distributed $294,193.08 to Butler and Westlie Motor Co., of which $246,717.23 went to Butler and the balance to Westlie. The trustee then filed his final account (Jt.App. at 248), which was approved by the bankruptcy court.

In August 1990, Haugen brought an adversary action against Butler in his Chapter 11 case. In that complaint, he alleged that Butler could not docket the bankruptcy court alter ego judgment in state court, the North Dakota Enforcement of Foreign Judgments Act was unconstitutional, and he had been denied due process and equal protection of the laws. Haugen also alleged that Butler was guilty of abuse of process and had tortiously executed upon property worth more than the amount to which Butler was entitled.

On September 24, 1990, the bankruptcy court entered an order concluding that Haugen's claims were state law claims, and that the bankruptcy court should abstain in favor of state jurisdiction. The district court affirmed that decision by order filed October 18, 1990. *See Haugen v. Butler Mach., Inc.,* 120 B.R. 124 (Bankr.D.N.D.1990) (Jt.App. at 45).

Haugen then filed a complaint in Ward County District Court, raising the same claims raised in his adversary action. On cross-motions for summary judgment, the state district court determined that Haugen's constitutional claims were without merit. It further determined, however, that it was not

possible to determine, from the 1985 Ward County judgment and the 1989 alter ego judgment, how much Haugen personally owed Butler. The court thus concluded, in its memorandum opinion, that the execution should not have issued on the alter ego judgment, and that all further action to collect on the alter ego judgment should be stayed. The state district court did not, however, enter an order to this effect, but rather stayed its hand in favor of the bankruptcy proceedings. *Haugen v. Butler Mach., Inc.,* Civil No. 90–1147, Mem.Op. at 8 (N.D. Aug. 8, 1991) (Jt.App. at 83).

To date the state district court has not issued a final order. On October 22, 1991, the district court indicated by letter that it would do nothing prior to the bankruptcy court's disposition of the motions set for hearing on November 13, 1991 (the disposition of which is presently appealed).

While all these events transpired, Butler filed its proof of claim in Haugen's individual bankruptcy. That claim, as amended January 15, 1991, was in the amount of $1,835,-264.93, which included a claim by Westlie for $423,555.[2] Haugen objected to Butler's claim, and sought to have it dismissed.

On November 4, 1991, the bankruptcy court heard cross-motions by the parties in Haugen's individual Chapter 11 case. Haugen moved for dismissal of Butler's claim and requested the bankruptcy court to order turnover to Haugen (as debtor in possession) all the funds Butler received as proceeds of the sheriff's sale in March 1990 (even though those funds had been turned over to the HCSI trustee and distributed).

Butler also moved the bankruptcy court in the HCSI bankruptcy for an order concluding the adversary class action and determining the amount Haugen owed Butler. It also moved for a determination of the amount of its claim in Haugen's personal bankruptcy. This issue required the district court to determine whether interest continued to accrue on the Ward County judgment after the date HCSI filed bankruptcy, and what amount should be credited to Haugen against that debt for funds paid to the HCSI bankruptcy

trustee. That question, in turn, required determination of who would bear the costs of the sheriff's sale, Butler or Haugen.

The bankruptcy court issued its order on November 13, 1991. It concluded that there was no need to enter an order concluding the class action in the HCSI bankruptcy, as its prior order was clear as to the amount that Haugen owed Butler. In the Haugen individual bankruptcy, the court denied Haugen's motion to dismiss Butler's claim and for turnover, and treated the issue as one to determine the amount of Butler's claim. The court held that Haugen's alter ego liability was derivative of HCSI's liability, and thus Haugen could owe no more than did HCSI. Because Butler was HCSI's creditor, and was undersecured in HCSI's bankruptcy, the court held that interest on the judgment stopped as of the filing date of HCSI's bankruptcy. The court further held that none of the proceeds of the sheriff's sale could be used to pay the costs of the execution sale of Haugen's personal property (i.e., Butler bore those costs). Finally, the court reduced Butler's claim in the Haugen personal bankruptcy by 100% of the gross proceeds from the sheriff's sale and the Santa Fe settlement, even though a significant portion of those proceeds went to pay administrative expenses and other claims.

## II. DISCUSSION

As complex and convoluted as this case may seem, the main issue on appeal is in reality quite straightforward: how much does Gary Haugen owe Butler Machinery? The answer to that question should determine the amount of Butler's claim in Haugen's individual bankruptcy. To reach that answer we must examine and answer four sub-questions: (1) what is Haugen's initial obligation to Butler; (2) does that obligation bear interest; (3) who must bear the cost of the execution sale of Haugen's property; and (4) to what extent should Haugen's debt to Butler be reduced by funds that either Haugen or Minot Sand paid into the HCSI bankruptcy? We consider these issues in turn.

---

2. Westlie's claim was included in Butler's because Butler was acting as the representative of the class of creditors for whom Butler had successfully litigated the alter ego action.

### A. Calculation of Haugen's Initial Obligation to Butler

Butler argues that the district court erred in refusing to value Butler's claim in the Gary Haugen personal bankruptcy as the amount of the initial Ward County judgment against HCSI plus interest from the date the Ward County judgment was rendered to the date of Gary Haugen's personal bankruptcy filing. Butler also contends that its claim in the Gary Haugen personal bankruptcy should include post-petition interest should Butler prove to be oversecured or should Haugen prove to be solvent. We disagree.

In computing the amount of Butler's individual claim against Haugen, the bankruptcy court noted that the alter ego judgment initially held Haugen liable only for Butler's bankruptcy claim against HCSI, namely the debts of HCSI on the date of its bankruptcy petition. Because Butler was undersecured as to its claim against HCSI, no interest ran against that claim after the date of HCSI's bankruptcy petition. The court stated:

Butler argues, however, that because Gary was held to be liable for all of Haugen Construction's debts that there has been a form of claim amalgamation with the claim against Haugen Construction becoming a claim against Gary, unfettered by the event of Haugen Construction's own bankruptcy filing or its own limited assets—assets which taken alone, would leave Butler undersecured but which, when buttressed by Gary's own considerable assets, leave it oversecured and thus amenable to continuing interest. The court disagrees with Butler's view. Butler's claim against Haugen Construction, a claim for which Gary was later held responsible, was determined and fixed in the Haugen Construction case. It did not take on new life by the events of the later alter ego judgment. All that judgment did was to render Gary and Minot Sand and Gravel jointly and severally liable for the claim against Haugen Construction—*as established in that case.* This means it carries no interest from and after the date of Haugen Construction's filing. The claim was fixed at $821,159.00 as set forth in the proof of claim—an amount which was never objected to in the Haugen Construction case and an amount which was recognized and allowed by the Chapter 7 trustee.

*In re Haugen,* No. 90–05296, Order at 4–5 (Bankr.D.N.D. Nov. 13, 1991).

Butler contends that the district court's alter ego judgment, rendered more than four years after the Ward County judgment, effectively made the Ward County judgment a judgment against Haugen from the date of its rendering. Butler contends that the bankruptcy court's holding that Haugen was HCSI's alter ego *mandates* a holding that Haugen was liable on the Ward County judgment from the date of its rendering. Butler states:

The result is that the judgment which was accruing interest was not just against HCSI, but was against Haugen as well. When HCSI—merely a sham corporation for Haugen's convenience—filed bankruptcy, the running of interest may have stopped as to HCSI, but the interest on Haugen's separate and independent liability continued. The corporate form cannot be given effect to stop Haugen's interest, while it is disregarded for all other purposes.

Br. of Appellant at 25.

■ We disagree. The only basis for Butler's claim against Haugen personally comes from the alter ego judgment in the HCSI bankruptcy. Without that judgment, Haugen could rely on the corporate form and Butler would be entitled only to what it would receive in the HCSI bankruptcy. Thus, Butler's claim against Haugen individually depends upon the effect of the alter ego judgment.

We cannot read the alter ego judgment to render Haugen liable on the Ward County judgment, or for anything more than the debts of HCSI existing on the date of HCSI's bankruptcy petition. The bankruptcy court's report and recommendation, upon which the district court entered judgment, provided that:

Accordingly, for the reasons stated, it is recommended that Gary Haugen personally and Minot Sand and Gravel, Inc. are *jointly and severally liable for all of the*

debts of *Haugen Construction Services, Inc.* as of June 3, 1985, (the date of the Debtor's [HCSI's] bankruptcy petition) including the following:

Acme Electric $1,730.00; Anderson Reports $60.00; Bearing & Drives $7,724.96, Butler Machinery 821,159.00 (arising from judgment obtained in Civil No. 51149 entered in Ward County District Court); Krebsbach, Inc. $422.64; Midwest Industrial $1,425.08; Midwest Industrial $10,-020.15; Northwest Equipment $707.55; Northwest Sheet & Iron Works 543.78; Rued Insurance $10,000; Sweeney Bros. $3,766.93; Wibe Electronics $314.12.

LET JUDGMENT BE ENTERED ACCORDINGLY.

*Butler Mach., Inc. v. Haugen (In re Haugen Constr. Servs., Inc.)*, No. 88–7083, Report and Recommendation at 18–19 (Bankr. D.N.D. July 11, 1989) (Jt.App. at 3). The district court entered judgment based upon this report and recommendation on September 15, 1989.

Thus, the district court's alter ego judgment clearly held Haugen liable to Butler not for the Ward County judgment but for a sum certain, $821,159, which represented HCSI's debt to Butler on the date of HCSI's bankruptcy filing.[3] Moreover, the judgment does not purport to make Haugen a judgment debtor on the Ward County judgment against HCSI, and says nothing about either

retrospective effect or prejudgment interest. Although the alter ego judgment clearly did not give Butler what it now claims it wants, Butler did not appeal at the time the adversary judgment was rendered. If in fact that judgment was a final, appealable judgment, Butler's failure to appeal means that we may not review the district court's decision to render judgment only for the debts of HCSI owing on the date of HCSI's bankruptcy petition.

The failure to appeal an order in bankruptcy will cause a forfeit of later review if two conditions occur: (1) the order is final under the standard of 28 U.S.C. § 1291, and (2) the judgment is set forth in a separate document as provided in Bankruptcy Rule 9021(a).[4] *See Matter of Kilgus*, 811 F.2d 1112, 1116–17 (7th Cir.1987). Both requirements are met in this case. Had the alter ego action been brought outside of bankruptcy, the judgment finding Haugen jointly and severally liable for the debts of HCSI on the date of petition would be a final order. Moreover, the judgment was entered on a separate document. *See Butler Mach., Inc. v. Haugen (In re Haugen Constr. Servs., Inc.,* No. 88–7083, Judgment (Bankr.D.N.D. Sept. 15, 1989)) (Jt.App. at 23). The judgment thus became final and appealable on September 15, 1989, the date the district court entered judgment in Butler's favor. Because Butler failed to appeal from the adversary judgment, we believe it must be

---

3. Haugen challenges the alter ego judgment on the ground that he was not given the opportunity to challenge the underlying breach of contract judgment against HCSI. That contention is meritless for two reasons. First, like Butler, Haugen failed to take a timely appeal. Second, even if Haugen had appealed, we would conclude that he could not now contest the results of the action against HCSI, as he controlled the litigation. *See Stetson v. Investors Oil, Inc.,* 176 N.W.2d 643, 651–52 (N.D.1970) ("The rule … is that a judgment recovered in an action is res judicata or conclusive, as to the issues adjudicated therein, in favor of or against a person who, though not an actual party to the record in that action, prosecuted the action or the defense thereto, on behalf of a party … if the same issue should be raised again in a subsequent action between him and the adversary of the party to whom his assistance was given or with whom he co-operated."). Here, Haugen not only prosecuted the action against Butler on behalf of HCSI, but he also was a party to the action as a guarantor, and

thus had a personal stake in the outcome of HCSI's liability to Butler. Therefore, Haugen is bound by the results of the original state court breach of contract action between HCSI and Butler.

Haugen also contends, and the state district court believed, that Butler could not "blend" the alter ego judgment with the Ward County judgment against HCSI to support a valid execution by Butler against Haugen. We believe this reasoning is incorrect. As noted above, Haugen cannot challenge the Ward County judgment against HCSI. Given that, the district court's alter ego judgment stands on its own as a valid judgment against Haugen, and does not need to be "blended" with an earlier judgment to constitute a valid judgment against Haugen.

4. Bankruptcy Rule 9021(a) provides, in pertinent part, that: "Every judgment entered in an adversary proceeding or contested matter must be set forth on a separate document."

bound by that judgment's plain terms, which make Haugen liable only for those debts of HCSI existing on the date of HCSI's bankruptcy petition.[5]

Thus, we conclude that Haugen's initial liability to Butler, for purposes of calculating Butler's bankruptcy claim, is the alter ego judgment in the amount of $821,159.

## B. Calculation of Interest on Haugen's Obligation to Butler

We disagree with the bankruptcy court, however, to the extent that it failed to include in Butler's claim interest accruing upon the alter ego judgment against Haugen from the date of entry of that judgment to the date of Haugen's individual bankruptcy petition. Moreover, we conclude that the bankruptcy court must examine whether interest continues to run on that debt after Haugen's bankruptcy petition either because (a) Butler is oversecured within the meaning of § 506(b) of the Bankruptcy Code, or (b) Haugen is solvent.

The bankruptcy court and the district court appeared to treat Haugen's liability to Butler as if Haugen was liable only for those debts of HCSI left unsatisfied at the close of HCSI's bankruptcy. We believe that this analysis was incorrect. The district court's alter ego judgment made Haugen personally a judgment debtor with respect to Butler; this judgment, less any satisfaction in the HCSI bankruptcy, is the source of Haugen's liability to Butler. Thus, whether Butler is entitled to interest from Haugen depends on whether interest can accrue on the judgment against Haugen individually.

Under federal law, "interest shall be allowed on any money judgment in a civil case recovered in a district court." 28 U.S.C. § 1291 (1988). Because a bankruptcy court is part of the district court, this statute applies to bankruptcy proceedings. *See In re Pester Ref. Co.*, 964 F.2d 842 (8th Cir.1992). The interest rate to be allowed is a question of federal law. As the district court's alter ego judgment against Haugen is for money damages, it constitutes a money judgment that potentially can bear interest.

The question remains whether the alter ego judgment against Haugen· was definite enough to bear interest. Haugen claims that it is not, as the judgment did not state a "bottom line" amount for which he is liable. We disagree. At least with respect to the amounts specifically set out in the bankruptcy court's report and recommendation, which the district court accepted, the judgment was certainly definite: the district court held Haugen liable for those amounts. *See supra* at 1446. Thus, interest can accrue on those amounts.

Finally, we see no contradiction between concluding that interest does not run on Butler's claim against HCSI, and concluding that it does run on Haugen's judgment liability to Butler. We have been provided with no basis for concluding that one joint judgment debtor may not continue to be liable for interest simply because another joint debtor is in bankruptcy. We conclude that interest can accrue on the $821,159 which the district court concluded Haugen owed Butler.

5. We recognize the potential inequity in concluding that Haugen is not liable for interest during much of the time that his actions caused Butler to be without the use of its money. This inequity is tempered, however, by our belief that there is a serious question about whether Butler should have been allowed to bring the alter ego action at all. When Butler filed the alter ego action, Haugen claimed that the action was barred by res judicata, as Haugen had been joined as a guarantor in Butler's initial action against HCSI. The bankruptcy court concluded that Butler's action was not barred, holding that in the state court action "the state court only determined that Haugen had no liability for the Debtors' debts as the result of a guarantee. The issue of whether the corporate veil should be pierced is a separate claim which was not presented to the state court and is not barred in the instant action by the doctrine of res judicata." *Butler Mach., Inc.*, No. 88–7083, Report and Recommendation at 13. Haugen did not appeal this ruling. Had he done so, we believe that the court should have found Butler's alter ego action barred by res judicata. *See, e.g., Bates Mktg. Assocs., Inc. v. Lloyd's Elecs., Inc.*, 190 N.J.Super. 502, 464 A.2d 1142, 1144 (1983) (failure to raise alter ego claim against parties to first action bars litigation of that alter ego claim against those parties in a subsequent action). We recognize that there is nothing we can do legally; however, in the balance of the equities, this seems to even things out.

Thus, on remand: (1) the bankruptcy court must include in Butler's claim in Gary Haugen's individual bankruptcy interest computed on the outstanding balance of the alter ego judgment against Gary Haugen from the date of the district court's entry of judgment in the alter ego class action until the date of Haugen's personal bankruptcy filing; and (2) the bankruptcy court must determine whether interest continues to accrue post-petition on this obligation.

## C. Costs of the Execution Sale

Butler claims that the bankruptcy court erred by reducing its claim against Gary Haugen by the entire amount realized at the execution sale of Haugen's personal assets, effectively charging Butler with the costs of that sale.

To satisfy Haugen's debt upon Butler's state court writ of execution, the sheriff sold a massive amount of Haugen's personal property. The amount of property involved required the sheriff to take extraordinary steps in conducting the sale. For example, the sheriff had to hire a company to move Haugen's heavy equipment to the place of sale, as the county was neither equipped nor insured to do so. The county had to arrange for storage of property until the date of sale. The sheriff further had to arrange for the care and feeding of exotic animals, including llamas, goats, and pigs, owned by Haugen, until the date of sale. Finally, because the sale involved so much property, the sheriff, believing that an auctioneer was necessary to bring the best price for the property, hired an auctioneer and paid him a five percent commission. *Butler Mach., Inc. v. Haugen (In re Haugen Constr. Servs., Inc.)*, No. 88–7083, Aff. of Kenneth Alexander (Bankr. D.N.D. Oct. 2, 1991) (Jt.App. at 91).

Butler claims that Haugen should be responsible for the costs of sale. Butler acknowledges that the North Dakota statute concerning execution sales is silent on these costs, while other North Dakota statutes (the Uniform Commercial Code and the statute concerning mortgage foreclosure sales) allocate the costs of sale to the debtor. Butler contends, however, that the rule allocating costs of such sales to the debtor is so universal that failure to include it in the execution statute was a mere oversight.

Haugen claims that it should not be liable for the costs of sale. He claims that the North Dakota execution statute's silence on the issue of costs means that the district court has discretion to allocate these costs, and that the district court exercised that discretion by allocating the costs to Butler. Haugen further contends that although there is no North Dakota law on point, the general rule is that a sheriff may not hire an auctioneer to conduct an execution sale and charge the costs to the debtor without the debtor's consent.

■ Unfortunately, neither party has provided us with any North Dakota case law on this issue, and we have been unable to find any. We conclude, however, that Haugen should bear the costs of the sale.

Section 28–21–06 of the North Dakota Century Code, concerning execution sales, provides in pertinent part that the sheriff shall:

1. If the execution is against the property of the judgment debtor, satisfy the judgment with interest and accruing costs, *which include sheriff and county costs,* out of the personal property of the debtor, and, if sufficient personal property cannot be found, out of the real property belonging to the debtor on the day when the judgment was docketed in the county or at any time thereafter.

N.D.Cent.Code § 28–21–06 (1991) (emphasis added). Neither the North Dakota statutes nor North Dakota case law define the term "sheriff and county costs." Several factors, however, lead us to construe that term to include all reasonable costs of sale.

First, as a general rule "the proceeds of an execution sale are subject to the payment of legal costs and official expenses which were incurred to effect the execution sale, and ... priority should be given to such costs and expenses in the distribution of the proceeds." 30 Am.Jur.2d Executions § 520, at 743; *accord* 33 C.J.S. Executions § 244, at 508. Second, North Dakota statutes require the sheriff to take at least some of the actions

taken in connection with this sale. North Dakota Century Code § 28–23–07 requires that if the sheriff sells "personal property capable of manual delivery, [the sale] must be within view of those who attend the sale and must be sold in such parcels as are likely to bring the highest price...." This provision appears to require the sheriff to marshal the personal property in one place for sale. For these reasons, we construe the term "sheriff and county costs" to include all the costs of sale except the auctioneer's fee.

The auctioneer's fee stands on a slightly different footing. As Haugen notes, the common law rule was that the sheriff generally could not hire an auctioneer to conduct an execution sale and charge those costs to the debtor. See 30 Am.Jur.2d Executions § 305, at 624; 33 C.J.S. Executions § 201, at 438. No North Dakota statute specifically authorizes the hiring of an auctioneer to conduct the sale. However, on the unique facts of this case, we conclude that the hiring of an auctioneer constitutes "sheriff or county costs" that can be paid from the proceeds of the execution sale prior to application of the proceeds to the satisfaction of Haugen's liability.

Under North Dakota law, the property at an execution sale must be sold "in such parcels as are likely to bring the highest price." N.D.Cent.Code § 28–23–07 (1991); *Lang v. Barrios,* 472 N.W.2d 464, 466 (N.D.1991). If the sheriff fails to fulfill this statutory duty, he may be liable for wrongful execution. *Lang,* 472 N.W.2d at 465.

The sheriff in this case considered his statutory duty and determined that it could best be fulfilled by hiring an auctioneer. He stated:

[D]ue to the large amount of personal property to be included in the sheriff's sale and the value of such property, it was clear to me that a sale conducted by me or any other deputy would not bring the best price for the property. Based upon my experience and observations, it was and is my opinion that only a professional auctioneer could properly organize, advertise and conduct a sale of this size in a manner that would obtain the highest price available for the goods.... The sale of this

property was, indeed, very successful and I believe that [the auctioneer's] efforts were well worth the 5% commission paid to him.

Aff. of Kenneth Alexander (Jt.App. at 92, 94–95). In light of the enormous amount of property involved in this sale, we view the sheriff's actions as reasonable steps taken to fulfill his statutory duty to maximize the proceeds of the sale. Without addressing anything beyond the unique facts of this case, we conclude that the sheriff's decision to hire an auctioneer was a reasonable one. Thus, such costs should be included in the sheriff's costs payable from the proceeds of the execution sale.

We thus hold that the district court erred in reducing Butler's claim against Gary Haugen by the costs of the execution sale. On remand the court must exclude these costs when computing the amount Haugen has contributed toward the satisfaction of his debt to Butler.

**D.  Distribution of the Proceeds and Calculation of Butler's Claim in Haugen's Personal Bankruptcy**

Butler contends that the district court erred in determining the amount of its claim against Haugen by crediting against its claim all amounts received from the execution sale of Haugen's personal property and from Minot Sand's involuntary bankruptcy, even though some of these proceeds were used to pay creditors other than Haugen and to pay administrative expenses of the HCSI bankruptcy.

Again, as we noted above, it appears that the district court computed Butler's claim in Gary Haugen's individual bankruptcy by reducing Butler's claim in the HCSI bankruptcy and then transferring the remaining balance as a claim against Haugen personally. We believe this was improper.

As we noted above, Haugen's individual liability to Butler is based upon the alter ego judgment holding him jointly and severally liable for HCSI's debts. Thus, the calculation of Butler's bankruptcy claim against Haugen should depend upon the extent to which Haugen's personal obligation to Butler

has been satisfied under the law concerning satisfaction of joint obligations.

Concerning joint obligations, the Restatement (Second) of Judgments § 50(2) provides: "Any consideration received by the judgment creditor in payment of the judgment debtor's obligation discharges, to the extent of the amount of value received, the liability to the judgment creditor of all other persons liable for the loss." The comment to this section provides that "[a] payment by one person liable for a loss reduces pro tanto the amount that the injured person is entitled to receive from other persons liable for the loss. Restatement, Second, Torts § 885(3); Restatement, Second, Contracts §§ 293, 294(3), 295(3). This rule applies even though the extent of the liability has not been conclusively determined at the time the payment is made." *Id.* at comment a. In other words, Haugen's obligation to Butler must be reduced by payments made to Butler in satisfaction of that obligation by Haugen himself, HCSI, or Minot Sand & Gravel.

In computing the extent to which Haugen's obligation to Butler has been satisfied, it is important to note that the class of plaintiffs benefited by the district court's alter ego judgment included creditors other than Butler. Obviously, Haugen's obligation to Butler cannot be satisfied by funds that went to creditors other than Butler. We cannot tell from the documents we have received whether and to what extent the proceeds from the execution sale of Haugen's property and from the Minot Sand & Gravel bankruptcy went to pay other members of the class benefited by the alter ego judgment. On remand, the bankruptcy court must exclude from the amounts deemed to satisfy Butler's judgment any proceeds of the execution sale of Haugen's personal property or the Minot Sand bankruptcy that were paid in the HCSI bankruptcy to other members of the class benefited by the class action.

Butler further claims that the bankruptcy court erred by reducing its claim against Haugen for funds that Butler secured and turned over to the HCSI bankruptcy trustee, but were then used to pay administrative expenses of the HCSI bankruptcy. In effect, Butler contends that its claim against Haugen should be reduced only by money that it actually received from Haugen, HCSI or Minot Sand & Gravel.

Haugen responds that failure to credit its payments that went to administrative expenses in the Haugen bankruptcy toward reduction of his debt to Butler would result in Haugen paying more than he owes. Haugen claims that Butler is entitled to only one satisfaction, and that he must be required to pay the debt only once.

We agree with Haugen on general principles, but not with their application. The Restatement (Second) of Judgments provides that consideration *received* by the judgment creditor from any of the joint obligors discharges the obligation of all joint obligors to the consent of the consideration *received.* *See* Restatement (Second) Judgments § 50(2). Although Haugen and Minot Sand contributed more than $700,000 to the HCSI bankruptcy, much of that amount was not received by Butler. We conclude that only those funds actually received by Butler may be counted as reducing Haugen's obligation to Butler for purposes of calculating Butler's claim in Haugen's individual bankruptcy.

We also do not believe that this unjustly requires Haugen to "overpay" his debts. First, Haugen was held liable for all the debts of HCSI. Thus, any funds that Haugen contributed to the HCSI bankruptcy which went to pay other creditors satisfied other valid debts which Haugen owed. Second, we do not believe it is inequitable to require Haugen to bear the administrative costs of the HCSI bankruptcy, to the extent that payment of those costs reduced funds available to satisfy Haugen's obligation to Butler. The alter ego judgment is in effect a finding that Haugen's conduct compromised HCSI's ability to pay its debts to the detriment of third party creditors. In that sense, we believe Haugen's conduct can be said to have caused those additional costs. We do not believe it is inequitable for Haugen to bear those costs.

In summary, the bankruptcy court on remand should calculate Butler's claim in Haugen's personal bankruptcy as follows: (1) the basis for Butler's claim in the Haugen bank-

**1452**

ruptcy is the alter ego judgment against Haugen, less amounts received by Butler in satisfaction; (2) Haugen's initial judgment liability is $821,159; (3) the outstanding balance on this judgment shall bear interest from September 15, 1989, to April 13, 1990, the date of Haugen's bankruptcy petition; (4) this obligation shall continue to bear interest during the pendency of Haugen's individual bankruptcy if (a) Butler is an oversecured creditor under § 506(b) of the Bankruptcy Code, or (b) Haugen is solvent; (5) in calculating the amount to which Haugen's obligation to Butler has been satisfied, the bankruptcy court shall exclude the costs of the execution sale of Haugen's personal property and reduce Haugen's obligation by only the net proceeds; and (6) Haugen's obligation to Butler shall be considered satisfied only to the extent that Butler actually received funds in satisfaction. We recognize that there is a dispute as to the amount that Butler actually received. The bankruptcy court must resolve this dispute in making its calculation of Haugen's liability to Butler.

### E. Haugen's Claim for Turnover

Haugen claims on appeal that the bankruptcy court erred in denying its motion to compel Butler to turn over to the trustee in Haugen's individual bankruptcy the funds Butler conveyed to the HCSI bankruptcy trustee. This contention is without merit, and we affirm.

### III. CONCLUSION

We affirm in part, reverse in part, and remand for further proceedings consistent with this opinion.